# EXHIBIT 5

# EXHIBIT 5

| DISTRICT COURT, MONTEZUMA, COLORADO | |
|---|---|
| **Montezuma County District Court**<br>**109 West Main St.**<br>**Cortez, Colorado 81321**<br>**(970) 565-1111**<br>_____<br>**Plaintiffs: JONATHAN BOYD and JAMI LARSON**<br><br>v.<br><br>**Defendants: MONTEZUMA COUNTY SHERIFF'S OFFICE; DENNIS SPRUELL, individually and in his capacity as Sheriff of Montezuma County; ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office**<br>_____ | DATE FILED: December 19, 2014 2:54 PM<br>FILING ID: 10BF9E7266802<br>CASE NUMBER: 2014CV30065<br><br><br>☐ COURT USE ONLY ☐<br>_____<br><br>Case No.:  **14 CV 30065** |
| Attorney for Plaintiffs:<br>Bopp Reynolds Law Group<br>Douglas J. Reynolds, Reg. No. 33272<br>P.O. Box 2002<br>Durango, Colorado 81302<br>Phone Number: 970-259-0661<br>Fax Number:  970-459-4318<br>E-mail:  drey@boppreynoldslaw.com | |
| **AMENDED COMPLAINT AND JURY DEMAND** | |

     **COMES NOW**, the Plaintiffs, Jonathan Boyd and Jami Larson, by and through their attorney, Douglas J. Reynolds of the Bopp Reynolds Law Group, and for their Complaint, state as follows:

### I.      PARTIES, STANDING, RIPENESS, JURISDICTION, & VENUE

     1.     Plaintiffs, Jonathan Boyd and Jami Larson, are citizens of the United States of America, residents of the State of Colorado, County of Montezuma, and reside at 31254 Rd. S, Cortez, CO 81328.  Plaintiffs are married to each other and together raise Plaintiff Larson's children.

     2.     As citizens of the United States, pursuant to 42 U.S.C.A. § 1983, the Plaintiffs have standing to bring this action.

     3.     Defendant Montezuma County Sheriff's Office is a corporate body politic which employs peace officers.

4.      Defendant Dennis Spruell is the elected Sheriff of the County of Montezuma, State of Colorado and was the head of the Montezuma County Sheriff's Office at the time of the incident that is the subject of this action.

5.      Defendant Adam Alcon, at the time of the incident that is the subject of this action, was an employee of the Montezuma County Sheriff's Office.

6.      Prior to filing this Complaint, the Plaintiffs exhausted all administrative remedies, including making demands and discussing the matter with the insurer for Montezuma County. Montezuma County was ultimately unwilling to make a settlement offer. In light of the foregoing, the claims for relief sought herein are ripe for judicial review.

7.      Defendants, acting under the color of law, deprived the Plaintiffs of their federal rights and privileges secured by the United States Constitution. Jurisdiction and venue for this cause of action are proper in the Montezuma County District Court because the constitutional violations complained of occurred in Montezuma County in the State of Colorado, and pursuant to 42 U.S.C.A. § 1988, state district courts have proper jurisdiction over any action or proceeding brought to enforce a provision of 42 U.S.C.A. § 1983.

8.      As this action is filed pursuant to 42 U.S.C.A. § 1983, and governed by the same, it is exempt from C.R.S. § 13-21-102(1.5)(a), which bars a claim for exemplary damages in any initial claim for relief.

## II. GENERAL ALLEGATIONS

9.      On June 10, 2013 at approximately 12:30 p.m., Plaintiffs were traveling south in the 6000 Block of U.S, Highway 160 in Montezuma County, Colorado, south of the City of Cortez, Colorado, in their 1997 Mercury Mountaineer Sport Utility Vehicle.  Plaintiff Jami Larson was driving the vehicle and Plaintiff Jonathan Boyd was in the front passenger seat.

10.      At or around the time and date described in Paragraph 9 above, Defendant Adam Alcon, a Sergeant with the Montezuma County Sheriff's Office, was working for the Sheriff's Office and was on patrol in a Sheriff's Office vehicle.  Traveling north, he observed the Plaintiffs' vehicle traveling in the opposite direction.  Shortly after the vehicles passed each other, he turned his vehicle around and proceeded to pull the Plaintiffs over in a parking lot located next to the businesses known as "The Antique Corral" and "Redburn Tire" at or about 6817 Hwy. 160, Cortez, CO.

11.      Defendant Alcon exited his vehicle and approached the Plaintiffs' vehicle from behind on the driver's side, passing by the rear driver's side door as he approached Plaintiff Larson in the driver's seat.  This approach offered Defendant Alcon an unobstructed view into the rear seat of the vehicle which was unoccupied at the time.  Located on top of that rear seat and in plain view was a .40 Caliber Glock handgun that was licensed to Mr. Boyd. Plaintiffs had made no attempt to hide or conceal such weapon.

2

12.     Defendant Alcon contacted Plaintiff Larson who was still seated in the vehicle and requested her identification and other relevant documents.  He advised that he had made the stop because he had observed Plaintiff Larson cutting off another vehicle as she pulled out of a business driveway. He then asked Plaintiff Larson about the fact that the vehicle had no valid license plates displayed. Plaintiff Larson explained to Defendant Alcon that Plaintiffs had just purchased the vehicle and they were taking it to the Department of Motor Vehicles office to get it registered in their names.  Defendant Alcon indicated that because the vehicle did not yet have valid license plates, it could not be driven to the DMV office. Upon hearing this, Plaintiff Jonathan Boyd, seated in the passenger seat, got somewhat agitated and asked Defendant Alcon how they should get to the DMV office if they could not drive there.   Defendant Alcon responded by telling Plaintiff Boyd "You, shut the fuck up. I was not talking to you, you are not part of this contact, shut the fuck up."

13.     At this time, Plaintiff Larson became concerned about the situation escalating as she is aware that Plaintiff Boyd can have issues with Post-Traumatic Stress Disorder.  She advised Defendant Alcon of this fact and requested that she be allowed to exit the vehicle so that they could move the conversation away from Plaintiff Boyd's presence.  The two of them moved to the rear of the vehicle and Defendant Alcon began asking questions about the registration of the vehicle and indicated that he intended to have the vehicle towed.  Defendant Alcon then asked Plaintiff Larson if there were any weapons in the vehicle and she advised him of the handgun on the backseat.  Defendant Alcon then began to question her about the handgun and whether she and Plaintiff Boyd had any convictions that would prevent them from owning such weapons.

14.      As Defendant Alcon questioned Plaintiff Larson about the weapon, Plaintiff Boyd, also concerned about how the incident might impact his Post-Traumatic Stress Disorder, attempted to remove himself from the growing conflict.  Aware of Defendant Alcon's possible concerns for his own safety, Plaintiff Boyd exited the car with his hands out to the side and visibly empty and attempted to walk away from the scene in full view of Defendant Alcon while announcing what he was doing.  Defendant Alcon then ordered Plaintiff Boyd to get back into the vehicle (where he knew a handgun was also located).  Plaintiff Boyd then asked Defendant Alcon if he was under arrest, but Defendant Alcon gave no response.

15.     In an attempt to calm the situation and make Defendant Alcon more comfortable, Plaintiff Larson walked over to Plaintiff Boyd and directed him back into the vehicle.  While she was turned away from him, Defendant Alcon un-holstered his electroshock weapon and pointed it at Plaintiff Boyd as he approached the vehicle.  Plaintiff Boyd saw the weapon and immediately raised his hands to show that he was unarmed and was not holding a weapon.

16.     Witnessing the foregoing, Plaintiff Larson stepped in front of Defendant Alcon and attempted to de-escalate the situation.  She advised him that if he was worried about the weapon that was in the car, she would retrieve it or would allow him to retrieve it for him if he wished.  Defendant Alcon did not accept either option Plaintiff Larson had suggested to de-escalate the situation, but instead physically grabbed her by the arm and drove her to the ground.

17.     After taking her to the ground, Defendant Alcon released Plaintiff Larson and she was able to regain her feet. In this position and with her arms raised and visible, Plaintiff Larson asked Defendant Alcon what he was doing and requested they simply finish their conversation about the traffic stop.  Defendant Alcon responded by again forcing Plaintiff Larson to the ground.  In the process of doing this, their legs became entangled and Defendant Alcon ended up roughly on top of Plaintiff Larson, pushing her head into the ground by her neck.  Defendant Alcon told Plaintiff Larson she was under arrest and Larson put her arms out to the side.

18.     At this point, Defendant Alcon was also ordering Plaintiff Boyd to remain in the vehicle and Boyd did so, keeping his hands visible and outside of the window of the car at all times.  However, as he struggled with Larson, Defendant Alcon did un-holster his service weapon and trained it on Boyd with his finger on the weapon's trigger.

19.     Defendant Alcon then began to order Plaintiff Larson to get on her stomach, something she could not do as her head was being held down by his knee. He then told Plaintiff Larson she was under arrest. Larson advised him that she could not lay on her stomach for medical reasons but offered to get up to her knees.  She also advised that she would do whatever he asked if he would simply allow her to get out of the position they were in. She was able to eventually work her way up to her knees and she placed her hands behind her back, but she was again forced down onto her stomach, her head bouncing off the ground in the process. After a few minutes, she was released by Defendant Alcon and Defendant Corbin Claxton, working as a deputy for the Montezuma County Sheriff's Office, handcuffed and took control of her.

20.     Defendant Alcon then ordered Plaintiff Boyd to exit the vehicle and Boyd did so. Boyd was then arrested and taken into custody by Defendant Alcon.  He was eventually transported to the Montezuma County Jail.

21.     During the incident and as a result of being wrestled to the ground by Defendant Alcon, Plaintiff Larson suffered bruises, abrasions and lacerations as well as a broken finger.

22.     Shortly after she was taken into custody by Deputy Claxton of the Montezuma County Sheriff's Office, Plaintiff Larson was placed into a vehicle being driven by Deputy Peck of the Montezuma County Sheriff's Office.  She was advised by Deputy Peck that she would be given medical attention for the finger at the Montezuma County Jail.  She was eventually transported to the Montezuma County Jail.

23.     Plaintiff Larson was charged by Defendant Alcon and/or the Montezuma County Sheriff's Office with Obstructing Government Operations (C.R.S. § 18-8-102), Resisting Arrest (C.R.S. § 18-8-103((1)(A), Operating an Uninsured Motor Vehicle (C.R.S. § 42-4-1409(1)) and Failure to Display Valid Registration (C.R.S. § 42-3-121(1)(A)).

24.     Plaintiff Boyd was charged by Defendant Alcon and/or the Montezuma County Sheriff's Office with Obstructing Government Operations (C.R.S. § 18-8-102) and Possession of a Weapon by a Previous Offender (C.R.S. § 18-12-108).

25.     Plaintiff Larson arrived at the Montezuma County Jail at approximately 1:00 p.m. and was placed in a holding cell.  She waited for several hours to be booked into the jail and sometime after 6:00 she asked jail staff, all employees of the Montezuma County Sheriff's Office, how long it would be before she would be processed.  At this time she also notified the staff that she and Plaintiff Boyd had minor children at home that needed to be contacted and advised of the status of their parents.  Sometime later she requested that a welfare check be done on their children and she was advised that the Jail would allow her to make a phone call. When this did not happen in a reasonable time, she again requested that a welfare check be done on their home.

26.     At 10:00 p.m. that evening, 9 hours after being brought to the Jail, Plaintiff Larson still had not been booked.  At that time she had the opportunity to speak with an acquaintance who was there to bond out a different individual.  That acquaintance notified her that the jail staff told her she would not be booked until after midnight.  Plaintiff Larson asked that acquaintance to please contact her family. Plaintiff Larson was eventually booked at approximately 4:00 a.m. the following morning on June 11, 2014 after being held for 15 hours in custody without access to a telephone.  She was released at 6:00 a.m.

27.      Plaintiff Boyd arrived at the Montezuma County Jail at approximately 1:00 p.m. and was also placed in a holding cell.  While he was being held and awaiting booking, the mattress was removed from his cell and jail staff failed to inquire about Plaintiff Boyd's medical needs despite being advised by both Plaintiffs that he was at risk of suffering seizures if he was not medicated.  Jail staff was also instructed not to respond to the intercom in the event that Plaintiff Boyd pressed it.  In addition, Plaintiff Boyd also made repeated requests to utilize a phone to contact the minor children in the Plaintiffs' home and advise them as to the situation or for County staff to conduct welfare checks on the children but such requests were denied or ignored.  Plaintiff Boyd was eventually booked at approximately 1:00 a.m. the following morning on June 11, 2014 after being held for 12 hours in custody without access to a telephone.

28.     On June 12, 2014, both Plaintiffs appeared in Montezuma County District Court for their initial appearances on the charges set forth in paragraphs 23 and 24 above.  At that time, William Furse, the District Attorney for the 22nd Judicial District of the State of Colorado appeared in person on behalf of the People of the State of Colorado and asked the Court to dismiss all charges against the Plaintiffs.  The Court granted this request and the Plaintiffs were released.

29.     In his capacity as the Sheriff of the County of Montezuma, State of Colorado and as the head of the Montezuma County Sheriff's Office, Defendant Spruell has cultivated and promoted a culture and understanding that encouraged officers to utilize excessive force and to violate the civil and constitutional rights of suspects and other parties they encountered in carrying out routine contacts and in conducting other law enforcement duties and roles.

30.     Defendant Spruell has instructed the officers under his command that he believes that no amount of displayed or utilized force violates the 4th amendment violation when executing an arrest as long as a stop or encounter is based on sufficient suspicion.

31.     Defendant Spruell has removed officers under his command from patrol activity for failing to display enough "alpha male" or machismo during their encounters with citizens. Defendant Spruell has instructed officers to display force and aggression when initiating encounters with the public as a means of gaining control over situations.

32.     The Montezuma County Sheriff's Office typically hires employees who have completed the Southwest Regional Law Enforcement Academy program conducted through Pueblo Community College's Mancos, Colorado campus.  That program is not operated by the Montezuma County Sheriff's Office, but it does adapt its program to meet the demands, wants and desires of the Sheriff's Office in providing POST training to individuals who may be considered potential deputies of the Sheriff's Office.  Pursuant to the implied or explicit request and desire of the Montezuma County Sheriff's Office, the Southwest Regional Law Enforcement Academy implements an educational program that instills in potential deputies levels of fear and anxiety that are unreasonable when considered in relation to the type of law enforcement environment such individuals are likely to encounter as Montezuma County Sheriff's deputies. This program also encourages the cultivation of certain aggressive mannerisms and demeanors which are designed to intimidate those persons that potential deputies come into contact with and also the use of often unnecessary or inappropriate escalating force to control contacts with such persons.

33.     In addition, after hiring potential deputies from the Southwest Regional Law Enforcement Academy, the Montezuma County Sheriff's Office does not provide an adequate or acceptable field training program that can instruct newly hired deputies on the proper and reasonable application of the skills and techniques they have learned at the academy in the rural law enforcement environment covered by the Montezuma County Sheriff's Office. Field training officers do not act to temper the new deputies tendencies to use aggressive mannerisms and demeanors designed to intimidate or the use of often unnecessary or inappropriate escalating force

34.     In January of 2011, the Montezuma County Sheriff's Office, under the direction of Defendant Spruell, hired an individual named Robin Cronk to act as the County Undersheriff, or second in charge.  Mr. Cronk had a history that included numerous complaints regarding the use of excessive force as a police officer.  In addition, Mr. Cronk had been arrested and charged with an incident involving second-degree burglary, first-degree criminal trespass and inflicting physical injury to an animal while a police officer. The victim of these crimes was his ex-fiance.

35.     Under Mr. Cronk's direction, officers of the Montezuma County Sheriff's Office were routinely encouraged to use excessive force against suspects and arrestees, even when such arrestees were effectively taken into custody and had ceased acting as a threat.  Mr. Cronk was personally involved in one incident in which a suspect tried to walk through a Sheriff's Office roadblock to access a home that was being threatened by a wildfire.  The suspect was taken to the ground and handcuffed and then, while still handcuffed, was taken down into a nearby ditch and repeatedly assaulted by Mr. Cronk and 2 other deputies.  He was then placed in the backseat of a patrol car and driven at a high rate of speed on a winding mountain road while un-seatbelted and unable to support himself in the seat.

36.     In another incident, Mr. Cronk, along with several other officers, was involved in a matter where a citizen of Montezuma County was illegally arrested and taken into custody.  On October 17, 2011, Cronk and others arrested Marion Harper under the pretense that a County Court Judge had issued a remand order for him. This statement was false; there was no remand order and Mr. Harper was not wanted or suspected of committing any crime.  The basis for the illegal arrest was that Mr. Harper had used obscenities in the judge's courtroom and that Mr. Cronk wished to take Mr. Harper back to the court to "apologize" to the judge. Mr. Harper later filed suit against the Sheriff's Office alleging an illegal arrest and settled with the County for $25,000.00.

37.     After Mr. Cronk was hired by the Montezuma County Sheriff's Office, he brought in a deputy named Darrin Harper. Mr. Harper also had a history of utilizing excessive force while on duty in his prior jurisdiction and he had been subject to disciplinary action for multiple incidents involving his violating the Constitutional rights of suspects and others in that jurisdiction. As an officer with the Montezuma County Sheriff's Office, Mr. Harper was involved in so many incidents involving alleged violations of the constitutional rights of suspects that the District Attorney for the 22nd Judicial District eventually notified Defendant Spruell that he would no longer prosecute cases where Mr. Harper was the lead officer involved. The District Attorney offered to provide training to Mr. Harper on proper constitutional conduct but was rebuffed by Defendant Spruell and the Sheriff's Office.  Despite being aware of the numerous complaints against and issues with Mr. Harper, both in the prior jurisdiction and in Montezuma County, Defendant Spruell and the Montezuma County Sheriff's Office failed to take disciplinary action against Mr. Harper or act to retrain him.  Instead, Mr. Harper was rewarded with a promotion to Sergeant.  He was eventually terminated by the Office once the issues with him became public.

38.     In one incident, Mr. Harper pulled over a driver of a vehicle named Linda Vavra who was suspected of being drug impaired. Ms. Vavra refused to voluntarily exit her vehicle upon demand from Mr. Harper.  Despite the vehicle being boxed in and unable to flee by tire spikes and other patrol vehicles, and despite Ms. Vavra being in plain view of the officers and posing no apparent threat of harm or being unable to destroy evidence, Mr. Harper broke out the window of the vehicle and dragged Ms. Vavra out of the vehicle and wrestled her to the ground for the purpose of arresting her. To the best of Plaintiffs' knowledge, Mr. Harper was never disciplined for this incident despite it being described in an article in the *Cortez Journal*.   In fact, Defendant Spruell praised Mr. Harper in that same article for being "very aggressive."

39.     Similarly, Defendant Alcon has been involved in numerous incidents that involved the questionable use of force and intimidation tactics other than the one at issue in this matter.  In one incident, Defendant Alcon stopped a teenage girl that had reportedly taken her parents car without permission.  When she did not immediately comply with Defendant Alcon's orders, he responded with aggressive force, wrestling her to the ground on her stomach and then pulling and brandishing his firearm at her while she was being handcuffed and while he was perched on top of her with his knee in her back.

40.     Officers of the Montezuma County Sheriff's Office have routinely un-holstered and displayed their service weapons in the course of conducting routine stops and in initiating

other routine encounters with citizens, including routine traffic stops.  In at least one incident, a group of adults returning from Durango, Colorado to Montezuma County was pulled over in a routine stop and were greeted by a deputy that had un-holstered and was brandishing his weapon despite the lack of an apparent or obvious threat to his safety.

41.     Defendant Alcon and several other members of the Montezuma County Sheriff's Office were also involved in at least one other incident where a citizen named Marshal Johnson was stopped by no less than 7 officers when he was voluntarily driving to meet and talk to an officer who had received a report that he had been involved in an altercation.  Mr. Johnson was cooperative and voluntarily pulled over for the officers and kept his hands elevated during the stop.  However, when he went to undo his seatbelt (in order to comply with the officers' orders to exit the vehicle), several of the officers descended on him and dragged him out of his vehicle and onto the ground to subdue him despite his lack of resistance.  In addition, once he was handcuffed, he was slammed into the floorboards of the back of a patrol car by Defendant Alcon with such force that it required 2 other deputies to get him back up and into the seat.  Despite being aware of the numerous complaints against and issues with Defendant Alcon, Defendant Spruell and the Montezuma County Sheriff's Office have failed to take disciplinary action against Defendant Alcon or act to retrain him. Instead, Defendant Alcon has been rewarded with promotions, first to Sergeant and then to Detective.

42.     Defendant Spruell and the Montezuma County Sheriff's Office have failed to investigate, take disciplinary action or require the re-training of officers, including Defendant Alcon, that are accused of using excessive force in routine stops or encounters or that show a history of using force incident to the arrests they affect.   In addition, the Montezuma County Sheriff's Office fails to enforce or put into practice its policies providing for the routine videotaping of stops and contacts by either negligently or intentionally failing to maintain, repair or ensure the operation of car mounted and activated cameras.  This is done for the purpose of concealing evidence of officer wrongdoing.  In the incident at issue in this manner, the Montezuma County Sheriff's Office failed to conduct even a cursory investigation of Defendant Alcon's actions.

43.     Numerous complaints and threats to file civil actions have been levied against Defendant Spruell, Montezuma County, and/or the Montezuma County Sheriff's Office for civil rights violations against innocent citizens. The number of complaints that have been received by the Montezuma County Sheriff's Office alleging civil rights violations exceeds what would statistically be expected for a Sheriff's Office in a Colorado County the size of Montezuma County.

44.     Many, if not all of the officers of the Montezuma County Sheriff's Office are uniformly armed in excess of any reasonable law enforcement need for a rural area such as Montezuma County and regularly utilize and brandish their weapons in excess of any such need. In addition, the officers cultivate a physical appearance, size and certain mannerisms and demeanors which are designed to intimidate those persons they come into contact with.  In effecting the stop and contact with Plaintiffs, Defendant Alcon exhibited these intimidating mannerisms and brandished his firearm in excess of any reasonable need to do so.

45.     Defendant Montezuma County Sheriff's Office cultivates and promotes a culture and understanding that encourages officers to utilize excessive force and to violate the civil and constitutional rights of suspects and other parties they encounter in carrying out arrests and in conducting other law enforcement duties and roles.  This culture and understanding has been created by, and is encouraged and promoted by Defendant Spruell personally and in his official capacity.  The Office has, in fact, been described by William Furse, District Attorney for the 22nd Judicial District, as a "self-proclaimed, para-military organization."

46.     On February 10, 2014, Plaintiffs, through counsel, delivered a letter to Defendants Spruell, Montezuma County and the Montezuma County Sheriff's Office alleging violations of their civil and constitutional rights by Defendant Alcon and demanding compensation and recompense for those violations.  Since the date and delivery of that letter, Plaintiffs and members of Plaintiff's family have been subjected to repeated and frequent police contacts, stops and questioning by members of the Montezuma County Sheriff's Office and other related police agencies, many of which seem baseless and without sufficient justification.  Plaintiffs assert that such contacts, stops and questioning have been arranged by the Defendants as a form of harassment and intimidation and with the purpose of discouraging Plaintiffs from filing this action.

### III.     FIRST CLAIM FOR RELIEF (USE OF EXCESSIVE FORCE)
### (Fourth and Fourteenth Amendment Violations Under 42 U.S.C.A. § 1983
### -Defendant Alcon)

47.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of the Complaint as though fully set forth herein.

48.     Defendant Adam Alcon individually and in his official capacity as an employee of Montezuma County, used excessive force under the color of law when he grabbed Plaintiff Larson by the arm and forced her to the ground repeatedly, held her head to the ground with his knee and then refused to allow her to raise off the ground after she indicated that she would comply with his orders and did not constitute a threat. Defendant's excessive use of force was the proximate cause of the violation of Plaintiff Jami Larson's Fourth Amendment rights.

49.     Defendant Adam Alcon, individually and in his official capacity as an employee of Montezuma County, used excessive force under the color of law when, at gunpoint and with intimidation and implied threat of deadly force, he ordered Plaintiff Jonathan Boyd to remain in his vehicle while he subdued Plaintiff Larson, Plaintiff Boyd's wife, on the ground in front of him.

50.     As a result of Defendant Alcon's excessive use of force under color of law, as encouraged by and promoted by Defendants Spruell, Montezuma County and the Montezuma County Sheriff's Office, Plaintiffs' Fourth Amendment rights have been violated, and they have suffered damages, to be determined at trial.

**WHEREFORE**, it is prayed that the Court grant relief as set forth below.

### IV.     SECOND CLAIM FOR RELIEF (UNLAWFUL ARREST)
### (Fourth and Fourteenth Amendment Violations Under 42 U.S.C.A. § 1983
### -Defendant Alcon)

51.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of the Complaint as though fully set forth herein.

52.     Defendant Adam Alcon individually and in his official capacity as an employee of Montezuma County, unlawfully arrested Plaintiff Larson on June 10, 2014 when she was taken into custody and charged with Obstructing Government Operations (C.R.S. § 18-8-102), Resisting Arrest (C.R.S. § 18-8-103((1)(A), Operating an Uninsured Motor Vehicle (C.R.S. § 42-4-1409(1)) and Failure to Display Valid Registration (C.R.S. § 42-3-121(1)(A)). The arrest of Larson was unlawful in that it was without probable cause and was done for the purpose of avoiding the consequences of his excessive use of force.  Defendant's unlawful arrest was the proximate cause of the violation of Plaintiff Jami Larson's Fourth Amendment rights.

53.     Defendant Adam Alcon individually and in his official capacity as an employee of Montezuma County, unlawfully arrested Plaintiff Boyd on June 10, 2014 when he was taken into custody and charged with Obstructing Government Operations (C.R.S. § 18-8-102) and Possession of a Weapon by a Previous Offender (C.R.S. § 18-12-108). The arrest of Boyd was unlawful in that it was without probable cause and was done for the purpose of avoiding the consequences of his excessive use of force.  Defendant's unlawful arrest was the proximate cause of the violation of Plaintiff Jonathan Boyd's Fourth Amendment rights.

54.     As a result of Defendant Alcon's excessive use of force under color of law, Plaintiffs' Fourth Amendment rights have been violated, and they have suffered damages, to be determined at trial.

**WHEREFORE**, it is prayed that the Court grant relief as set forth below.

### V.     THIRD CLAIM FOR RELIEF (MALICIOUS PROSECUTION)
### (Fourth and Fourteenth Amendment Violations Under 42 U.S.C.A. § 1983
### -Defendant Alcon)

55.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of the Complaint as though fully set forth herein

56.     Defendant Alcon was acting within the course and scope of his employment the Montezuma County Sheriff's Office when, as a complaining witness, he instituted the prosecution of Plaintiffs.

57.     Defendants Alcon maliciously and without probable cause caused criminal charges to be brought and prosecuted against Plaintiffs for the purpose of covering up Defendant Alcon's use of excessive and unreasonable force.

58.     Plaintiffs had all of the criminal charges brought against them at the instigation of Defendant Alcon dismissed in full by the District Attorney for the 22nd Judicial District of the State of Colorado.

59.     As a result of Defendant Alcon's malicious prosecution of the Plaintiffs, Plaintiffs' Fourth Amendment rights have been violated, and they have suffered damages, to be determined at trial.

**WHEREFORE**, it is prayed that the Court grant relief as set forth below.

## VI.     FOURTH CLAIM FOR RELIEF (CUSTOM OR PRACTICE AND FAILURE TO TRAIN AND SUPERVISE) (Fourth and Fourteenth Amendment Violations Under 42 U.S.C.A. § 1983–Defendant Spruell, Individually, and Montezuma County Sheriff's Office)

60.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 46 of the Complaint as though fully set forth herein.

61.     The Defendant Montezuma County Sheriff's Office cultivates and promotes a culture and understanding that encourages officers, as custom and practice, to utilize excessive force and to violate the civil and constitutional rights of suspects and other parties they encounter in carrying out arrests and in conducting other law enforcement duties and roles.  This culture and understanding has been created by, and is encouraged and promoted by Defendant Dennis Spruell personally and in his official capacity.

62.     Defendant Dennis Spruell is the elected head of and ultimate policymaker for the Montezuma County Sheriff's Office, and he is ultimately responsible for the conduct and actions of his subordinate deputies, investigators, and employees, and for the policies and procedures of the Montezuma County Sheriff's Office. The detention and arrest of Plaintiffs occurred on Defendant Spruell's watch and with his authority and acquiescence, as a result of his encouragement and promotion of a custom and practice of authorizing Fourth Amendment-violating uses of excessive force. Defendant Spruell deprived Plaintiffs of their Fourth Amendment rights against unreasonable search and seizure, and did so under the color of law.

63.     Defendants Spruell and the Montezuma County Sheriff's Office recklessly and negligently failed to properly train and supervise Defendant Alcon, as is clearly evidenced by Defendant Alcon's use of excessive force in effecting the arrest of Plaintiffs. The event necessitating this action was not a single aberrational action, but one of numerous constitutional violations conducted in the course of Defendant Spruell and his Office's policework. Defendants were aware of prior complaints filed against their law enforcement personnel, and have failed to provide additional training, supervision, discipline, and guidance, which might otherwise have prevented this incident from occurring.

64.     The level of aggression and deliberate indifference to Constitutional rights displayed by law enforcement personnel under the supervision of Defendants has remained a constant custom and practice of the Montezuma County Sheriff's Office over the years, as is the Defendants' failure to train and supervise officers of the Montezuma County Sheriff's Office.

65.     Defendants' practice of allowing incompetent law enforcement personnel to remain under their employ has resulted in the violation of other innocent citizens' constitutional rights, of which Plaintiffs are only the most recent victims.

66.     Defendants, by negligently and recklessly tolerating the use of excessive force by its law enforcement officers in the course of effecting arrests have established a custom and practice of permitting and encouraging abusive, dangerous behavior. This pattern has in previous instances resulted in violations of the constitutional rights of private citizens who have had the misfortune to cross their path. The incident necessitating this action is only the latest incident of the use of excessive force by a member of the Montezuma County Sheriff's Office, all of which have occurred under the supervision of Defendant Spruell.

67.     Because of the repeated occurrences of the use of excessive force by the officers of the Montezuma County Sheriff's Office and a refusal to learn from past mistakes, the events precipitating the incident at issue in this matter constitute a pattern of deliberate indifference to violations of due process and reckless abuse of governmental power, of which Plaintiffs are only the most recent known victims.

68.     Defendants' custom, practice and failure to train and supervise was the moving force and proximate cause behind the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights as discussed above.

69.     As a result of the Defendant Montezuma County Sheriff's Office's custom and practice of encouraging the use of excessive force and by not adequately training and supervising the law enforcement officers in their employ, Plaintiffs' Fourth and Fourteenth Amendment rights have been violated, and they have suffered damages, to be determined at trial.

**WHEREFORE**, it is prayed that the Court grant relief as set forth below.

## VII.    REQUEST FOR A JURY TRIAL

Plaintiffs request a Trial by Jury and have previously tendered their jury fee with this Court.

## VIII.   REQUEST FOR RELIEF

**WHEREFORE**, it is prayed that the Court grant relief as follows:

1.     Enter judgment for Plaintiffs Jonathan Boyd and Jami Larson and against Defendant Alcon, individually and in his official capacities as an employee of the Montezuma County Sheriff's Office, for the Plaintiffs' damages pursuant to Plaintiffs' First, Second and Third Claims for Relief according to proof submitted at trial;

2.     Enter judgment for Plaintiffs Jonathan Boyd and Jami Larson and against Defendant Dennis Spruell, individually and the Montezuma County Sheriff's Office for damages

pursuant to Plaintiffs' Fourth Claim for Relief—Failure to Train and Supervise, and Reckless and Negligent Hiring.

   3.  Award Plaintiffs Jonathan Boyd and Jami Larson their costs, expert witness fees, attorneys fees pursuant to 42 U.S.C.A. § 1988(b), and such further relief as the Court deems appropriate in the premises.

   **RESPECTFULLY SUBMITTED** this 19th day of December, 2014.

        BOPP REYNOLDS LAW GROUP

        By: _S/ Douglas J. Reynolds_____
        Douglas J. Reynolds, Atty. Reg. 33272
        P.O. Box 2002
        143 E. 10th St
        Durango, CO 81302

        *In accordance with C.R.C.P. 121 original*
        *signature is available for inspection upon*
        *request at Bopp Reynolds Law Group*

Plaintiff's address:
31254 Rd. S
Cortez, CO 81328