IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00101-MEH

JONATHAN BOYD and
JAMI LARSON,

    Plaintiffs,

vs.

MONTEZUMA COUNTY SHERIFF'S OFFICE,
DENNIS SPRUELL, individually and in his capacity as Sheriff of Montezuma County, and
ADAM ALCON, individually and in his capacity as an employee of the Montezuma County
Sheriff's Office,

    Defendants.
_____

**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**
_____

    Defendants, MONTEZUMA COUNTY SHERIFF'S OFFICE, DENNIS SPRUELL, individually and in his capacity as Sheriff of Montezuma County, and ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office, hereby submit this motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and, in support thereof, state as follows.

## **NATURE OF THE CASE**

    This action is brought by Plaintiffs, Jonathan Boyd and Jami Larson, arising out of a traffic stop and arrest on June 10, 2013, in Montezuma County, Colorado, by Defendant Alcon. Plaintiffs allege that Defendant Alcon pulled them over and caused the traffic stop

to escalate through his actions, ultimately arresting Plaintiffs and taking them to the Montezuma County Jail for booking. Plaintiffs assert four claims, all pursuant to 42 U.S.C. § 1983, as follows: 1) use of excessive force in violation of the Fourth and Fourteenth Amendments (against Defendant Alcon); 2) unlawful arrest in violation of the Fourth and Fourteenth Amendments (against Defendant Alcon); 3) malicious prosecution in violation of the Fourth and Fourteenth Amendments (against Defendant Alcon); and 4) custom or practice and failure to train and supervise in violation of the Fourth and Fourteenth Amendments against Defendant Spruell and the Montezuma County Sheriff's Office. This motion seeks dismissal of the excessive force claim as asserted by Plaintiff Boyd, the unlawful arrest claim as asserted by both Plaintiffs, and the malicious prosecution claim as asserted by both Plaintiffs.

## **FACTUAL ALLEGATIONS**

Plaintiffs allege that, on June 10, 2013, they were traveling south on Highway 160 in Montezuma County, Colorado in a vehicle driven by Plaintiff Larson when they were pulled over by Defendant Alcon. Doc. 4 at ¶ 9-10. Defendant Alcon approached Plaintiffs' vehicle, requested identification and other documents from Plaintiff Larson, and reportedly told Plaintiffs he had pulled them over because their vehicle did not have valid license plates displayed. Plaintiffs claim that they told Defendant Alcon they had been on their way to the Department of Motor Vehicles but Defendant Alcon said it could not be driven there. Plaintiff Boyd allegedly became "somewhat agitated" and spoke to Defendant Alcon who told him to "shut the fuck up." *Id*. at ¶ 12.

Plaintiff Boyd allegedly has "issues with Post-Traumatic Stress Disorder" ("PTSD") and Plaintiff Larson reportedly became concerned about this and asked Defendant Alcon if she could exit her vehicle so they could "move the conversation away from Plaintiff Boyd's presence." *Id*. at ¶ 13.  Defendant Alcon agreed and, during their conversation, allegedly stated he intended to have the vehicle towed and then asked if there were weapons in the vehicle.  Plaintiff Larson told him there was a handgun on the backseat, prompting questions about whether she or Plaintiff Boyd had convictions that would prevent them from having a handgun.  *Id*.

Meanwhile, Plaintiff Boyd claims to have also been concerned about his PTSD and got out of the car, but Defendant Alcon reportedly ordered him back into the vehicle.  However, rather than get back into the vehicle, Plaintiff Boyd remained outside, and Plaintiff Larson went over to him.  Plaintiffs claim that Defendant Alcon then "un-holstered his electroshock weapon and pointed it at Plaintiff Boyd as he approached the vehicle," and that Plaintiff Boyd raised his hands.  *Id*. at ¶¶ 14-15.

Plaintiff Larson allegedly then stepped in front of Defendant Alcon and told him if he was concerned about the weapon "she would retrieve it or would allow him to retrieve it." *Id*. at ¶ 16.  However, Defendant Alcon then allegedly "physically grabbed her by the arm and drove her to the ground." *Id*.  A struggle reportedly ensued, with Defendant Alcon releasing Plaintiff Larson then "again forcing [her] to the ground," eventually winding up on top of Plaintiff Larson and telling her she was under arrest.  *Id*. at ¶ 17.  At this time, according to the Complaint, Plaintiff Boyd was in the vehicle, obeying Defendant Alcon's

commands to stay there, and Defendant Alcon allegedly "trained" his service weapon on Plaintiff Boyd. *Id*. at ¶ 18.

Plaintiffs claim that there was another struggle between Plaintiff Larson and Defendant Alcon as Plaintiff Larson reportedly could not get on her stomach for medical reasons but instead "work[ed] her way up to her knees and she placed her hands behind her back" but was again forced to her stomach with "her head bouncing off the ground in the process." She was then taken into custody by Montezuma County Sheriff's Deputy Corbin Claxton. *Id*. at ¶ 19. Plaintiff Larson alleges that she sustained "bruises, abrasions and lacerations as well as a broken finger" as a result of her struggle with Defendant Alcon. *Id.* at ¶ 21.

Plaintiffs were taken to the Montezuma County Jail where they reportedly had to wait for several hours before being booked and then released without the ability to make telephone calls. Plaintiff Larson was charged with obstructing government operations, resisting arrest, operating an uninsured motor vehicle, and failure to display valid registration. Plaintiff Boyd was charged with obstructing government operations and possession of a weapon by a previous offender. These charges were reportedly dismissed by the District Attorney for the 22nd Judicial District on June 12, 2014. *Id*. at ¶¶ 22-28.

## STANDARD OF REVIEW

### I. Judgment on the Pleadings

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is reviewed under the same standard as a motion for failure to state a claim made pursuant

4

to Fed. R. Civ. P. 12(b)(6). *See Mock v. T. G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Supreme Court requires that a complaint contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555.) In applying this standard, the Tenth Circuit has held that where allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). Further, the Tenth Circuit has held that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).

While the 12(b)(6) standard may not always require that a plaintiff establish a *prima facie* case in his complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002); *see also Twombly,* 550 U.S. at 570. It is, however, "not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Twombly,* 550 U.S. at 563 n.8

(quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 526 (1983)).

II.     **Qualified Immunity**

"When a defendant asserts qualified immunity . . . the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established" at the time of the violation. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). *See also Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818-22 (2009). In determining whether conduct was objectively unreasonable in light of clearly established law at that time, the Court's inquiry focuses on whether the official was on notice that the conduct violated clearly established law and that the law itself provided fair warning that his conduct was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002). *Pearson* recognized that court may address either inquiry first. *Pearson*, 129 S. Ct. at 818-22. "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)).

**LEGAL ARGUMENT AND AUTHORITY**

I.     **DEFENDANT ALCON IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFF BOYD'S CLAIM FOR EXCESSIVE FORCE.**

    A.     <u>The allegations do not establish a constitutional violation.</u>

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*,

6

490 U.S. 386, 396 (1989). The Tenth Circuit has stated that "[p]hysical contact is not required for an excessive force claim – patently unreasonable conduct is." *Cortez v. McCauley*, 478 F.3d 1108, 1131 (10th Cir. 2007). Moreover, "[a]n excessive force claim requires some actual injury, be it physical or emotional, that is not de minimis." *Segura v. Jones*, 259 F. App'x 95, 102-03 (10th Cir. 2007). For instance, in *Segura*, the use of handcuffs on a suspect for approximately five minutes, together with marks that had disappeared by the next day, and being pushed against the wall in order to apply the handcuffs, was not found to violate clearly established law sufficient to overcome an officer's assertion of qualified immunity. *Id*. at 103-04.

Plaintiffs' first claim for relief is for use of excessive force and is asserted against Defendant Alcon. This motion is directed to the claim as asserted by Plaintiff Boyd. The Complaint states that Defendant Alcon used excessive force when "at gunpoint and with intimidation and implied threat of deadly force, he ordered Plaintiff Jonathan Boyd to remain in his vehicle while he subdued Plaintiff Larson, Plaintiff Boyd's wife, on the ground in front of him." Doc. 4 at ¶ 49.

Plaintiff Boyd has not plausibly alleged an excessive force claim. While physical contact may not be required for such a claim, some de minimis injury, either physical or emotional, is required. Plaintiff Boyd details no such injury, merely applying the conclusory label of excessive force. Accordingly, the first claim for relief must be dismissed to the extent it is maintained by Plaintiff Boyd.

### B. The law was not clearly established sufficient to overcome qualified immunity.

Whether a right was clearly established must be viewed in the "specific context of the case, not as a broad general proposition." *Lynch v. Barrett*, 703 F.3d 1153, 1161 (10th Cir. 2013) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Although the prohibition against the use of excessive force is clear, Defendants are unaware of any United States Supreme Court or Tenth Circuit precedent that would indicate that Defendant Alcon was on notice that his specific conduct violated clearly established law with respect to Plaintiff Boyd's excessive force claim.

## II. DEFENDANT ALCON IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFFS' CLAIM FOR UNLAWFUL ARREST.

### A. The allegations do not establish a constitutional violation.

An arrest made without a warrant may violate the constitution if there was no probable cause supporting the arrest. "In evaluating the existence of probable cause, we consider whether the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (internal quotations omitted). Moreover, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). *See also Simpson v. Kansas*, ___ F. App'x ___, No. 13-3272, 2014 WL 6679439 at *3 (10th Cir. Nov. 26, 2014) ("The arrest would have been permissible even though the crime

was minor, punishable by a fine."); *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) ("When a warrantless arrest is the subject of a § 1983 action, the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff.").

Plaintiffs allege that their arrests were unlawful in that they were made without probable cause and, in fact, were done "for the purpose of avoiding the consequences of [Defendant Alcon's] excessive use of force." Doc. 4 at ¶¶ 52-53. However, the allegations in the Complaint make it clear that Plaintiffs were pulled over by Defendant Alcon and then began to act strangely and, ultimately, defiantly, including ignoring his verbal commands.[1] Additionally, Plaintiffs do not assert that their vehicle was registered or insured. That the charges against them were later dismissed is of no difference to the Fourth Amendment unlawful arrest analysis. *See Fogarty*, 523 F.3d at 1156 ("[A]n officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime.").

As Plaintiffs' own allegations establish probable cause for criminal violations, regardless of the severity of such violations, Defendant Alcon had probable cause for their arrests. Accordingly, their allegations do not rise to the level of a constitutional violation and their claim for unlawful arrest must be dismissed.

---

1    C.R.S. § 18-8-102 provides that "[A] person commits obstructing government operations if he intentionally obstructs, impairs, or hinders the performance of a governmental function by a public servant, by using or threatening to use violence, force, or physical interference or obstacle."

B.  The law was not clearly established sufficient to overcome qualified immunity.

As with Plaintiff Boyd's excessive force claim, Defendants are unaware of any United States Supreme Court or Tenth Circuit precedent that would indicate that Defendant Alcon was on notice that his conduct violated clearly established law with respect to Plaintiffs' claim for unlawful arrest.

### III. DEFENDANT ALCON IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFFS' CLAIM FOR MALICIOUS PROSECUTION.

A.  The allegations do not establish a constitutional violation.

The constitutional dimension of a malicious prosecution claim is, at best, in controversy within the circuits. The United States Supreme Court plurality opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), indicated that such claim has little support under a substantive due process analysis. *Id*. at 275 (holding that "substantive due process, with its 'scarce and open-ended guideposts,'" affords no relief for 1983 action for arrest without probable cause) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). Further, where the state provides an adequate post-deprivation remedy — such as a state tort action for malicious prosecution — procedural due process does not provide harbor for a constitutional malicious prosecution claim. *See* S. Nahmod, *Civil Rights and Civil Liberties Litigation, the Law of Section 1983*, § 3:66 (4th ed. 2011).

The Tenth Circuit has considered the post-*Albright* dimensions of a Fourth Amendment malicious prosecution claim. In *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the court recognized the Fourth Amendment as the source of constitutional law for the "initial seizure" but noted that "at some point after arrest" the constitutional analysis

shifts to the Fourteenth Amendment's due process clause. *Id*. at 1285-86. The court did not reach the issue of where the Fourth Amendment right ended and the Fourteenth Amendment right began as it was not argued by the parties on appeal. *Id*. at 1286.

In *Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008), the Tenth Circuit reached the question unanswered in *Pierce*. Therein, the Tenth Circuit clearly divided the line between a claim arising under the Fourth Amendment and a claim arising under the Fourteenth Amendment's Due Process Clause:

> The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment. That claim accrues when the plaintiff is released or legal process is instituted justifying that imprisonment. The period of time between the institution of that process and its favorable termination – through acquittal, habeas corpus, voluntary dismissal, etc. – forms a second claim, arising under the Due Process Clause. That claim accrues, at the earliest, when favorable termination occurs.

*Id.* at 1083.

*Mondragon* expressly did not address what impact a viable state remedy might have on the malicious prosecution claim sounding under the Fourteenth Amendment due process clause. *See id*. at n.5 ("Because the only issue on this appeal is the timeliness of Mr. Mondragon's claim, not its merits, we do not decide whether additional requirements, such as the existence of adequate state law remedies, might apply to a procedural due process claim."). However, the answer to this question was suggested by Justice Kennedy's concurrence in *Albright* in which he stated that "our precedents make clear that a state actor's random and unauthorized deprivation of [Fourteenth Amendment due process interests] cannot be challenged under 42 U.S.C. § 1983 so long as the State

11

provides an adequate post deprivation remedy." *Albright*, 510 U.S. at 284. Citing, in part, Justice Kennedy's concurrence, the Tenth Circuit in *Becker v. Kroll*, 494 F.3d 907 (10th Cir. 2007) held that the plaintiff had not suffered any deprivation of liberty in violation of her procedural due process rights because Utah law provided an adequate post deprivation remedy to protect the plaintiff's non-Fourth Amendment liberty interests.

Five years later, speaking again to the distinction provided by the institution of legal process, in *Myers v. Koopman,* 738 F.3d 1190 (10th Cir. 2013), the Tenth Circuit provided further clarification:

> What separates the two claims? – the institution of legal process. Unreasonable seizures imposed without legal process precipitate Fourth Amendment false imprisonment claims. *See* [*Wallace v. Kato*, 549 U.S. 384, 389 (2008)] (concluding that false imprisonment was the proper analogy where defendants did not have a warrant for the plaintiff's arrest and thus detention occurred without legal process). Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims. *See* [*Heck v. Humphrey*, 512 U.S. 477, 484 (1994)] (where detention occurs with legal process the "common-law cause of action for malicious prosecution provides the closest analogy"). Like rain and snow, the claims emanate from the same source, but under different conditions.

*Id*. at 1194.

Thus, the nature of the seizure – whether with or without legal process – determines the type of claim available to a § 1983 plaintiff.[2]

---

2      While the Supreme Court has not explored the contours of a malicious prosecution claim since *Albright,* it did recently hint that such cause of action against a police officer does not exist. *See Rehberg v. Paulk*, ___ U.S. ___, 132 S. Ct. 1497, 1508 (2012) ("[A] detective . . . unlike a complaining witness at common law, does not make the decision to press criminal charges . . . It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute.").

12

Here, the Complaint establishes that Plaintiffs were arrested without a warrant. As set forth in *Myers*, then, a claim for false imprisonment may be available, but a claim for malicious prosecution is not. Plaintiffs already have asserted a false arrest claim (as addressed above), which is legally indistinct from a false imprisonment claim. *See Myers*, 738 F.3d at 1195, n.4 (10th Cir. 2013); *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter . . . . We shall thus refer to the two torts together as false imprisonment.").

Moreover, to the extent Plaintiffs' claim against Defendants is based on the Fourteenth Amendment, Colorado provides a post-deprivation remedy in the form of an action for malicious prosecution at common law. *See Myers*, 738 F.3d at 1193 ("The district court rightly rejected Myers' Fourteenth Amendment malicious-prosecution claim under 42 U.S.C. § 1983 because Colorado law provides an adequate remedy.").

B.  The law was not clearly established sufficient to overcome qualified immunity.

The uncertainty with which the United States Supreme Court and the Tenth Circuit have written opinions touching on the scope of a constitutional malicious prosecution claim demonstrates that the law was not clearly established at the time of Plaintiffs' arrest sufficient to put Defendant Alcon on notice that he was violating Plaintiffs' constitutional rights. Defendants are not aware of any opinion by the United States Supreme Court or the Tenth Circuit establishing that warrantless arrests made with probable cause can lead to viable malicious prosecution claims. As there is no constitutional basis for Plaintiffs' malicious prosecution claim, it must be dismissed.

13

## IV. PLAINTIFFS' *MONELL* CLAIM MUST BE PARTIALLY DISMISSED.

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1976), provides that a municipal defendant is accountable for a constitutional deprivation only if it was the result of municipal custom or policy. Before a municipal defendant can be held liable there must be both (1) a predicate constitutional injury and (2) a causal link between the constitutional injury and a municipal custom or policy. *See, e.g.*, *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) ("proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation"). *See also City of Los Angeles v. Heller*, 475 U.S. 796 (1986); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

To the extent that there was no constitutional violation by Defendant Alcon concerning the above claims, Defendants note that Plaintiffs' *Monell* claim against Defendant Montezuma County Sheriff's Office and Defendant Spruell should also be dismissed.

## CONCLUSION

Defendant Alcon is entitled to qualified immunity with respect to the excessive force claim as asserted by Plaintiff Boyd, the unlawful arrest claim as asserted by both Plaintiffs, and the malicious prosecution claim asserted by both Plaintiffs. Such claims either are not

supported by the factual allegations in the Complaint or by United States Supreme Court or Tenth Circuit authority.

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff Boyd's excessive force claim, Plaintiffs' unlawful arrest claim, Plaintiffs' malicious prosecution claim, and Plaintiffs' *Monell* claim to the extent it rests upon these claims, with prejudice, and award Defendants attorney fees and costs as allowed by law.

Respectfully submitted,

Date: 02/26/2015

s/ Ann. B. Smith
Ann B. Smith
    VAUGHAN & DeMURO
    111 South Tejon Street, Suite 545
    Colorado Springs, CO 80903
    (719) 578-5500 (phone)
    (719) 578-5504 (fax)
    vnd@vaughandemuro.com (e-mail)
ATTORNEY FOR DEFENDANTS

CERTIFICATE OF SERVICE

      I hereby certify that on this 26th day of February, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Douglas J. Reynolds**
drey@boppreynoldslaw.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

      s/ Ann. B. Smith
      Ann. B. Smith
         VAUGHAN & DeMURO
         111 South Tejon Street, Suite 545
         Colorado Springs, CO 80903
         719-578-5500 (phone)
         719-578-5504 (fax)
         vnd@vaughandemuro.com (e-mail)
     ATTORNEY FOR DEFENDANTS