IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-00101

JONATHAN BOYD and
JAMI LARSON,

Plaintiffs,

vs.

MONTEZUMA COUNTY SHERIFF'S OFFICE, DENNIS SPRUELL, individually and in his capacity as Sheriff of Montezuma County, and ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office,

Defendants.

---

**PLAINTIFFS' RESPONSE TO MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

**COMES NOW** Plaintiffs, Jonathan Boyd and Jami Larson, through their attorney, Douglas J. Reynolds, and hereby submit this Response to Defendants' Motion for Partial Judgment on the Pleadings (Document 18).

### INTRODUCTION

Defendants bring their Motion for Partial Judgment on the Pleadings (the "Motion") seeking dismissal based on qualified immunity for five of the six 42 U.S.C. § 1983 claims asserted by Plaintiffs against Defendant Adam Alcon: Plaintiff Jonathon Boyd's ("Boyd") claim for excessive force (4th amendment), Plaintiff Jami Larson's ("Larson") and Boyd's claims for unlawful arrest (4th amendment) and Larson and Boyd's claims for malicious prosecution (14th amendment). In addition, Defendants also seek the dismissal of any *Monell* claims against Defendant Montezuma County Sheriff's Office and Defendant Dennis Spruell that would stem from the incidents or actions on which any of the foregoing claims are based.

1

With regard to Boyd's excessive force claim, Defendants incorrectly assert that Plaintiffs' Amended Complaint fails to adequately allege a clearly established constitutional violation on the part of Defendant Alcon. In fact, the Amended Complaint clearly alleges that Defendant Alcon un-holstered and pointed his loaded service firearm at Boyd with his finger visibly over the trigger during the course of an investigative stop without his having probable cause to believe that Boyd had committed any crime and without justification that his or any other party's safety was duly threatened. This was a use of force against Boyd that violated clearly established constitutional parameters under the 4th Amendment.

With regard to Plaintiffs' unlawful arrest claims, Defendants assert that Plaintiffs' Amended Complaint fails to adequately allege any clearly established constitutional violations on the part of Defendant Alcon. This assertion is particularly incorrect with regard to Boyd as the Amended Complaint clearly shows that Defendant Alcon did not have probable cause to believe that Boyd had committed any crime at the time that of either his effective arrest or at the time of his formal arrest. Therefore, that arrest violated clearly established constitutional parameters under the 4th Amendment. With regard to Larson, Plaintiffs' concede that

With regard to Plaintiffs' malicious prosecution claims under the due process clause of the 14th Amendment, Plaintiffs concede upon review of the Motion and conducting further research that Plaintiffs' claims are indeed barred as a matter of law and therefore consent to the dismissal of those claims against Defendant Alcon.

## **STANDARD OF REVIEW**

As Defendants acknowledge, a motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion for failure to state a claim where "a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the

2

light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor." *Tapia v. City of Albuquerque*, 10 F.Supp.3d 1323, 1349 (D.New Mexico 2003) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, (2007); *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir.2009)). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994).

## **RELEVANT FACTS**

The relevant facts of this matter, as they are alleged in the Amended Complaint (Document 4), are as follows:

On June 10, 2013 at approximately 12:30 p.m., Plaintiffs were traveling south in the 6000 Block of U.S, Highway 160 in Montezuma County, Colorado in their newly purchased 1997 Mercury Mountaineer Sport Utility Vehicle. *See* Doc. 4 at ¶ 9. Plaintiff Jami Larson was driving the vehicle and Plaintiff Jonathan Boyd was in the front passenger seat. *See* Doc. 4 at ¶ 9. At or around the same time and date, Defendant Adam Alcon, a Sergeant with the Montezuma County Sheriff's Office, was traveling north on the same road. *See* Doc. 4 at ¶ 10. Shortly after the vehicles passed each other, he turned his vehicle around and proceeded to pull the Plaintiffs' vehicle over. *See* Doc. 4 at ¶ 10. Defendant Alcon exited his vehicle and approached the Plaintiffs' vehicle from behind on the driver's side. *See* Doc. 4 at ¶ 11. This approach offered Defendant Alcon an unobstructed view into the rear seat of the vehicle which was unoccupied at the time. *See* Doc. 4 at ¶ 11. Located on top of the rear seat and in plain view was a .40 Caliber Glock handgun that was licensed to Boyd. *See* Doc. 4 at ¶ 11. Plaintiffs had made no attempt to hide or conceal such weapon. *See* Doc. 4 at ¶ 11.

Defendant Alcon contacted Larson who was still seated in the vehicle and advised that he had made the stop because he had observed her cutting off another vehicle as she pulled out of a driveway. *See* Doc. 4 at ¶ 12. He then asked Larson about the fact that the vehicle had no valid license plates displayed and she explained that Plaintiffs had just purchased the vehicle and were taking it to get it registered in their names. *See* Doc. 4 at ¶ 12. Defendant Alcon indicated that because the vehicle did not yet have valid license plates, it could not be driven to the DMV office. *See* Doc. 4 at ¶ 12. Upon hearing this, Boyd, still seated in the passenger seat, asked Defendant Alcon how they should get to the DMV office. *See* Doc. 4 at ¶ 12. Defendant Alcon responded by telling Boyd "You, shut the fuck up. I was not talking to you, you are not part of this contact, shut the fuck up." *See* Doc. 4 at ¶ 12. At this time, Larson became concerned about the situation escalating as she is aware that Boyd can have issues with Post-Traumatic Stress Disorder. *See* Doc. 4 at ¶ 13. She advised Defendant Alcon of this fact and suggested they move the conversation away from Boyd's presence. *See* Doc. 4 at ¶ 13. The two of them moved to the rear of the vehicle and Defendant Alcon began asking questions about several matters. *See* Doc. 4 at ¶ 13. Defendant Alcon then asked Larson if there were any weapons in the vehicle and she advised him of the handgun on the backseat. *See* Doc. 4 at ¶ 13.

As Defendant Alcon questioned Larson, Boyd, also concerned about how the incident might impact his Post-Traumatic Stress Disorder, attempted to remove himself from the situation. *See* Doc. 4 at ¶ 14. Aware of Defendant Alcon's possible concerns for his own safety, Boyd exited the car with his hands out to the side and visibly empty and attempted to walk away from the scene in full view while announcing what he was doing. *See* Doc. 4 at ¶ 14. Defendant Alcon then ordered Boyd to get back into the vehicle (where he knew a handgun was also located). *See* Doc. 4 at ¶ 14. Boyd then asked Defendant Alcon if he was under arrest, but

4

Defendant Alcon gave no response. *See* Doc. 4 at ¶ 14. In an attempt to calm the situation, Larson walked over to Boyd and directed him back into the vehicle. *See* Doc. 4 at ¶ 15. At this time, Defendant Alcon un-holstered his electroshock weapon and pointed it at Boyd as he approached the vehicle. *See* Doc. 4 at ¶ 15. Boyd saw the weapon and immediately raised his hands to show that he was unarmed and was not holding a weapon. *See* Doc. 4 at ¶ 15. Witnessing the foregoing, Larson stepped in front of Defendant Alcon and attempted to de-escalate the situation, advising him that if he was worried about the weapon in the car, she would retrieve it or would allow him to retrieve it if he wished. *See* Doc. 4 at ¶ 16. Defendant Alcon did not accept either option Larson had suggested to de-escalate the situation, but instead physically grabbed her by the arm and drove her to the ground. *See* Doc. 4 at ¶ 16.

After taking Larson to the ground an initial time, Defendant Alcon released her briefly and she was able to regain her feet. *See* Doc. 4 at ¶ 17. In this position and with her arms raised and visible, Larson requested that they simply finish their conversation about the traffic stop. *See* Doc. 4 at ¶ 17. Defendant Alcon responded by again forcing Larson to the ground. *See* Doc. 4 at ¶ 17. At this point, Defendant Alcon was also ordering Boyd to remain in the vehicle and Boyd did so, keeping his hands visible and outside of the window of the car at all times. *See* Doc. 4 at ¶ 18. However, as he struggled with Larson, Defendant Alcon un-holstered his service weapon and trained it on Boyd with his finger on the weapon's trigger. *See* Doc. 4 at ¶ 18.

Plaintiff Larson was subsequently arrested and charged by Defendant Alcon and/or the Montezuma County Sheriff's Office with Obstructing Government Operations (C.R.S. § 18-8-102), Resisting Arrest (C.R.S. § 18-8-103((1)(A)), Operating an Uninsured Motor Vehicle (C.R.S. § 42-4-1409(1)) and Failure to Display Valid Registration (C.R.S. § 42-3-121(1)(A)). *See* Doc. 4 at ¶ 19 and 23. Boyd was arrested and charged by Defendant Alcon and/or the

Montezuma County Sheriff's Office with Obstructing Government Operations (C.R.S. § 18-8-102) and Possession of a Weapon by a Previous Offender (C.R.S. § 18-12-108). *See* Doc. 4 at ¶ 20 and 24.

**ARGUMENT**

1. **Plaintiff Boyd has adequately alleged a claim for use of excessive force under the 4th Amendment against Defendant Alcon.**

Defendants first argue that there is no sufficient constitutional violation alleged with regard to Defendant Alcon's use of force against Boyd. Defendants argument seems to center around the premise that because Defendant Alcon did not actually physically accost or touch Boyd, an action for excessive force cannot lie. However, as Defendants concede in their Motion, "physical contact is not required for an excessive force claim – patently unreasonable conduct is." *Cortez v. McCauley*, 478 F.3d 1108, 1131 (10th Cir. 2007). Plaintiffs clearly allege in the Amended Complaint that Defendant Alcon "did un-holster his service weapon and trained it on Boyd with his finger on the weapon's trigger." *See* Doc. 4 at ¶ 18. Pointing a firearm at a non-suspect party in the context of an investigatory stop can be deemed to be an excessive use of force regardless of whether or not any physical contact is ever made. *See e.g Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179 (10th Cir.2001). In the context of the stop and situation at issue in this matter, it was patently unreasonable for Defendant Alcon to point his firearm at Plaintiff Boyd; therefore a constitutional violation has been adequately alleged.

While Defendants are correct in asserting that qualified immunity can only be overcome where a constitutional right is clearly established, that does not mean that there needs to be a prior case with "precisely the same facts." *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011) (*quoting Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)). Instead, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general

proposition. The pertinent question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation.'" *Id.* (*quoting Bowling v. Rector,* 584 F.3d 956, 964 (10th Cir.2009). The Supreme Court has explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). To this end, "the degree of physical coercion that law enforcement officers may use is not unlimited, however, and '*all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard....'" *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) (quoting *Graham v. Connor,* 490 U.S. 386 (1989). The *Graham* Court has further explained that "because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In the instant case, it is important to remember that Boyd was not the subject of the original stop conducted by Defendant Alcon; he was a passenger in the vehicle being driven by Larson and was not suspected of committing any kind of crime himself. At most, his contact with Detective Alcon would be described as an investigative detention. *See Oliver v. Woods,* 209 F.3d 1179, 1186 (10th Cir.2000) (An investigative detention is "a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause.") However, once Defendant Alcon pulled his firearm and trained it on Boyd (who was inside of the vehicle with his hands showing and outside of the open window), Defendant Alcon's contact

7

with Boyd escalated to that of an arrest. *See United States v. Melendez–Garcia,* 28 F.3d 1046, 1052 (10th Cir.1994) ("[T]he use of firearms, handcuffs, and other forceful techniques" generally exceed the scope of an investigative detention and enter the realm of an arrest). However, a warrantless arrest is only permissible when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir.1995). *See also Cortez*, 478 F.3d at 1117 ("The law was and is unambiguous: a government official must have probable cause to arrest an individual.") Further, "settled law makes it clear that probable cause is measured at the moment the arrest occurs and must derive from facts and circumstances based on reasonably trustworthy information. *Id.* (*citing Hunter v. Bryant,* 502 U.S. 224, 228 (1991)).

Defendant Alcon's pointing of his firearm at Boyd was objectively unreasonable in the situation at hand as he had no probable cause to affect an arrest of Boyd at that time and in those circumstances as he had no reason to believe that Boyd had committed any kind of crime at that point in time. He had not received the (ultimately erroneous) information that Boyd was a felon and not allowed to be in possession of a handgun. In addition, it cannot be reasonably said, based upon the facts set forth in the Amended Complaint, that Defendant Alcon had probable cause to believe that Boyd was guilty of obstructing government operations as set forth in C.R.S. § 18-8-102.[1] At that point in time Boyd had returned to the vehicle as Defendant Alcon had ordered him to do and remained seated as Defendant Alcon was ordering him to do, with his hands visible and outside of the open car window. None of this gave rise to a reasonable conclusion that he was in any way trying to obstruct or interfere with the traffic stop or even the arrest of Larson, or that he was doing so through the use or threat of violence, force or physical interference. Because

---

[1] The statute defines "obstructing government operations" as "intentionally obstructs, impairs, or hinders the performance of a governmental function by a public servant , by using or threatening to use violence, force, or physical interference or obstacle."

8

there was no cause for an arrest at that moment, his constitutional rights were violated when Defendant Alcon pointed his firearm at Plaintiff Boyd, a per se use of excessive force in the context of an investigatory detention. *See Id.* at 1127 ("If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest."); *see also Holland*, 298 F.3d at 1192 ("Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use.")

However, even if Defendant Alcon did have probable cause to arrest Boyd for the minimal charge that was eventually pressed against him, the pointing of his firearm at Boyd was unreasonable and excessive to affect that arrest. Remember that the Supreme Court in *Graham* explained that some of the factors to be considered in determining the reasonableness of any particular use of force in an arrest or an investigative stop include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. In the situation at hand, the severity of the crime was low (a Class 3 misdemeanor) and Boyd was making no attempt to flee or resist; to the contrary, he returned to and remained in the vehicle even as his wife was being manhandled by Defendant Alcon. In contrast, the pointing of a loaded firearm at an individual by an officer is an extremely aggressive showing of deadly force; a use that is typically reserved for only the most serious of situations. *See Holland*, 298 F.3d at 1192 ("the pointing of firearms directly at persons inescapably involves the immediate

threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time.")

As for the question of officer safety, Defendant Alcon will no doubt point to the existence of a firearm in the vehicle as sufficient grounds for his actions. However, this argument overlooks the fact that (a) he had been informed of the weapon by Larson at the initiation of the stop and failed to take action to remove it before the situation escalated, (b) had ordered Boyd to re-enter the car knowing there was a weapon inside, (c) refused Larson's invitation to either remove the weapon himself or have her remove it before Boyd re-entered the car and (d) could see Boyd's hands visible and empty outside of the car window during the entire period in which he was arresting Larson. It also overlooks the fact that the entire situation had been needlessly escalated to that point by his own actions in dealing with and handling Larson and Boyd for what was, at best, a minor traffic infraction. Given the foregoing, it was unreasonable for Defendant Alcon to worry for his own safety, or the safety of others, such that it rose to a level where the display of deadly force was necessary and proper.

In addition, it is not necessary that a party suffer or show "evidence of physical injury to satisfy the 'actual injury' element of an excessive-use-of-force claim." *JH ex rel JP v. Bernalillo County*, 2014 WL 3421037 at 61 (D.New Mexico 2014) (citing *Holland*, 298 F.3d at 1195). The *Holland* court further explained that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests—a person's 'sense of security' and individual dignity." *Holland*, 298 F.3d at 1195. In this matter, Boyd has alleged sufficient injury, psychic and otherwise, to survive a motion to dismiss. *See* Doc. 4 at ¶ 50.

## 2. Plaintiffs have adequately alleged a claim for unlawful arrest under the 4th Amendment against Defendant Alcon.

Next, Defendants assert that Plaintiffs' Amended Complaint does not establish valid claims for unlawful arrest under the 4th Amendment. With regard to Boyd, it has been explained above that at the time that Defendant Alcon pulled his firearm and pointed it at Boyd, he was effectively arresting him. However, it has also been explained that at the time of the effective arrest, there was no valid reason for Defendant Alcon to believe that Boyd was committing any kind of actual criminal offense. In fact, Boyd had fully complied with the orders of Defendant Alcon and was not interfering with the arrest of Larson by use or threat of force or violence (as hard as it may have been for him to restrain himself). Therefore, there was no probable cause to arrest him for obstructing government operations as there was nothing in his behavior to indicate he was obstructing anything that Defendant Alcon wished to do at that time, or later. In addition, Boyd was eventually charged with possession of a weapon by a previous offender, but this charge was added *after* the initial arrest and once Defendant Alcon received erroneous information over his radio that Boyd had a felony history. As it was not the basis for the initial arrest, that misunderstanding could not have formed the basis for probable cause to arrest Boyd. It is also axiomatic and a basic precept of 4th Amendment law, known by all law enforcement officials, that an officer must have probable cause before affecting an arrest. *See Cortez*, 478 F.3d at 1117 ("The law was and is unambiguous: a government official must have probable cause to arrest an individual.")

With regard to Larson, the matter is a bit more complicated. Defendants first imply that Defendant Alcon had probable cause to arrest Larson based upon the alleged traffic violation of driving without displaying valid license plates or registration, a charge that was eventually levied

against Larson. However, this position is without merit as the underlying charge of Failure to Display Valid Registration, C.R.S. § 42-3-121(1)(A), does not constitute a criminal offense that subjects a party to potential arrest. A violation of that particular statute is deemed to be a Class B Traffic Infraction under Colorado law and is thus a civil, not criminal, offense. See C.R.S. § 42-4-1701(1); *People v. Redinger*, 906 P.2d 81, fn.1 (Colo. 1995) ("Traffic infractions are civil, not criminal, matters"). As a result, there was no way probable cause could exist to affect an arrest for the alleged violation of that statute; an officer simply cannot arrest for a civil offense regardless of the situation. *See Simpson v. Kansas*, 593 Fed.Appx. 790, 795 (10th Cir. 2014) (arrest on traffic violation only legal under 4th Amendment where traffic violation is classified as a criminal offense.)

Defendants also imply that Defendant Alcon had probable cause at the time of arrest to effect an arrest of Larson for Operating an Uninsured Motor Vehicle, C.R.S. § 42-4-1409(1), stating that "Plaintiffs do not assert that their vehicle was registered or insured." However, the issue of insurance actually appears nowhere in the facts alleged in the Amended Complaint either way and thus should not be considered by this Court as a proper pretext for an arrest in the context of a Motion to Dismiss. The uninsured allegation is simply being added by Defendants as a fact where it does not already exist in the Amended Complaint; if Defendant Alcon wishes for this Court to consider this as an affirmative fact in support of a later motion to dismiss he can do so in the context of a summary judgment motion, but it should not be considered in the context of this motion for judgment on the pleadings.

However, Plaintiffs concede that Defendant Alcon's arrest of Larson for obstructing government operations is a closer call. However, based on the totality of the situation, Defendant Alcon still lacked probable cause to affect an arrest for this minor charge. It is conceded that

Larson did step between Defendant Alcon and Boyd while Defendant Alcon was giving orders to Boyd at the point of his electroshock device. *See* Doc. 4 at ¶ 16. However, she did so with the stated, apparent and obvious purpose of attempting to de-escalate the situation and calm Boyd down, not for the purpose of obstructing, impairing, or hindering the performance of a governmental function by use of physical interference or obstacle. Larson was clearly not attempting to assist Boyd in fleeing or in any other way avoiding the directions of Defendant; in fact, just prior to taking the action set forth above she had directed and escorted Boyd back to the vehicle as Defendant Alcon had ordered. *See* Doc. 4 at ¶ 15. In addition, her mannerisms and words to Defendant Alcon clearly conveyed that she was attempting to ease the situation for him as she volunteered to either retrieve or have him retrieve the firearm that was in the car. *See* Doc. 4 at ¶ 16. Larson was, if anything trying to assist Defendant Alcon in calming the situation and any belief to the contrary on the part of Defendant Alcon was unreasonable. Because Larson clearly and obviously lacked the requisite mindset to support a charge of obstructing government operations, Defendant Alcon's unreasonable belief cannot stand as probable cause for that arrest.

However, even if it is found that Defendant Alcon did have probable cause to arrest Larson for obstructing government operations, that does not translate to his having probable cause to arrest Boyd as well. Nonetheless, Defendants' motion conflates the two parties for the seeming purpose of avoiding the obvious lack of probable cause for Boyd's arrest. For example, the Motion states that "Plaintiffs were pulled over by Defendant Alcon" and then states that "Plaintiffs do not assert that their vehicle was registered or insured." *See* Motion at pg. 9. These statements imply that both Larson and Boyd were responsible for driving the vehicle without valid registration and insurance when such was not the case; Larson was solely responsible for any traffic violation as at no point is it alleged that Boyd was driving the vehicle and in no way

13

can it be asserted that a passenger in a vehicle is responsible for traffic violations committed by a driver. Larson's actions cannot form the basis for probable cause to arrest Boyd.

In addition, the Motion attempts to assert facts that simply do not appear in the Amended Complaint. For example, the Motion states that Plaintiffs acted "defiantly, including ignoring [Defendant Alcon's] verbal commands." *See* Motion at pg. 9. However, nowhere in the Amended Complaint is it asserted that either Plaintiff ever defied or ignored Defendant Alcon's commands. To the contrary, the Amended Complaint makes it clear that both Boyd and Larson went out of their way to comply with Defendant Alcon's instructions. For example, even though he was admittedly agitated, Boyd returned to the car when he was ordered to do so, stayed in the car while Larson was being wrestled to the ground and kept his hands clear and visible at all times. *See* Doc. 4 at ¶ 18. Larson similarly attempted to not only cooperate with an increasingly agitated and upset Defendant Alcon at all times, but also frequently offered suggestions on de-escalating the increasingly tense situation (all of which were ignored by Defendant Alcon, who instead elected to continue the escalation). The only command that Larson resisted was Defendant Alcon's order that she lay on the ground on the stomach, something she explained she could not do for health reasons. *See* Doc. 4 at ¶ 16. However, even in that circumstance she offered to cooperate, offering to get on her knees and telling Defendant Alcon that "she would do whatever he asked if he would simply allow her to get out of the position they were in." In all, there is not a single allegation in the Amended Complaint that would lead to a conclusion that Plaintiffs "ignored" Defendant Alcon's commands.[2]

---

[2] Plaintiffs concede that Defendant Alcon may very well dispute the version of events set forth in the Amended Complaint, but that cannot be the basis for a motion for judgment on the pleadings, where the only salient facts for the Court to consider are the facts that are alleged in the complaint, facts which are assumed to be true for that purpose.

3.  **Plaintiffs concede that their 14th Amendment malicious prosecution claim against Defendant Alcon is not cognizable under 42 U.S.C. § 1983.**

Upon review of the motion and after consideration of same, Plaintiffs concede that their 14th Amendment claim for malicious prosecution is not cognizable where there is an alternative state court remedy for such, and they therefore consent to the dismissal of those particular claims against Defendant Alcon. A Stipulated Motion to this effect is being filed by all parties contemporaneously with the filing of this Response.

4.  **This Court need not do anything with regard to Plaintiffs' *Monell* claims because regardless of whatever relief may be granted with respect to the Motion, Plaintiff will continue to maintain at least one claim that could support a *Monell* claim against the Montezuma County Sheriff's Office and/or Dennis Spruell.**

Plaintiffs admit that they are not completely sure what relief Defendants are requesting be granted with regard to Plaintiffs' *Monell* claims. Defendants may be correct in asserting that municipal liability is only available if there is a predicate constitutional injury, but even if all of the relief requested by Defendants in the Motion is granted by this Court, that would not eliminate the survival of a possible *Monell* claim against the Montezuma County Sheriff's Office and/or Dennis Spruell with regard to the excessive force claim that is alleged by Larson. Plaintiffs concede that the dismissal of Boyd's excessive force claim or of the unlawful arrest claims by either Defendant may preclude the pursuit of a *Monell* claim with regard to those particular actions, depending on the basis for the particular dismissal (see e.g. *McCoy v. City of New York*, 2008 WL: 3884388 (E.D.N.Y.), where the court noted that entity liability could still be established where individual liability was foreclosed because of qualified immunity), but this does not require the Court to take any particular action at this time. Any action on Plaintiff's *Monell* claim can be dealt with during the course of further litigation.

## **CONCLUSION**

To be frank, Defendants' Motion seems to be getting ahead of itself to some extent as Defendants seem to want this Court to dismiss many of Plaintiffs' claims based on facts that are not established or even alleged through the Amended Complaint. However, if the Court sticks to a review of the allegations set forth in the Amended Complaint, as it is proper to do in the context of a motion for judgment on the pleadings, it is clear that Plaintiffs have met their burden of alleging adequate facts to show that Defendant Alcon violated their clearly established constitutional rights to be free of excessive force and an unlawful arrest, all while acting under the color of law. As such, Defendants' request to dismiss Boyd's excessive force claim and both of Plaintiffs' unlawful arrest claims on the basis of qualified immunity should be denied.

**WHEREFORE**, Plaintiffs respectfully request that this Court deny Defendants' request to dismiss Boyd's excessive force claim and both of Plaintiffs' unlawful arrest claims on the basis of qualified immunity.

**RESPECTFULLY SUBMITTED** this 6th day of April, 2015.

> BOPP REYNOLDS LAW GROUP
>
> By: */s/ Douglas J. Reynolds*
> Douglas J. Reynolds, Reg. No. 33272
> Bopp Reynolds Law Group
> P.O. Box 2002
> Durango, Colorado 81302
> (970) 259-0661
> Email: drey@boppreynoldslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April, 2015, I electronically filed a true and accurate copy of the foregoing **PLAINTIFFS' RESPONSE TO MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

   Ann B. Smith
   Vaughan and DeMuro
   111 South Tejon Street, Suite 545
   Colorado Springs, CO 80903
   vnd@vaughandemuro.com


                                   */s/ Douglas J. Reynolds*