IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00101-MEH

JONATHAN BOYD, and
JAMI LARSON,

    Plaintiffs,

v.

MONTEZUMA COUNTY SHERIFF'S OFFICE,
DENNIS SPRUELL, in his individual and official capacities as Sheriff of Montezuma County,
ADAM ALCON, in his individual and official capacities,

    Defendants.

---

## ORDER ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendants' Motion for Partial Judgment on the Pleadings [filed February 26, 2015; docket #18]. Defendants seek dismissal of all remaining claims, except the excessive force claim by Plaintiff Larson against Defendant Alcon and any corresponding municipal liability associated with that claim. The motion is fully briefed. For the reasons set forth below, the Motion for Partial Judgment on the Pleadings is **denied**.

### I. STATEMENT OF FACTS

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiffs (or construed liberally) in the Amended Complaint (Complaint), which are taken as true for analysis under Fed.R.Civ.P. 12(b)(6) pursuant to *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court must limit its review to the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

On June 10, 2013, at approximately 12:30 p.m., Plaintiffs (who are married) were traveling south in the 6000 Block of U.S. Highway 160 in Montezuma County, Colorado in their newly purchased 1997 Mercury Mountaineer SUV. Amended Complaint, ¶ 9. Plaintiff Jami Larson was driving the vehicle; Plaintiff Jonathan Boyd was in the front passenger seat. *Id.* Defendant Adam Alcon, a Montezuma County Sheriff's Deputy, pulled Plaintiffs' vehicle over. *Id.*, ¶ 10. Alcon exited his vehicle and approached the Plaintiffs' vehicle from behind on the driver's side. *Id.*, ¶ 11. There was a handgun owned by Boyd lying on the back seat of their vehicle. *Id.* Alcon spoke with Larson (the driver) who was still seated in the vehicle and advised he had made the stop because he had observed her cutting off another vehicle as she pulled out of a driveway. *Id.*, ¶ 12. He then inquired of Larson as to the vehicle's lack of license plates; she explained that Plaintiffs had just purchased the vehicle and were taking it to get it registered in their names. *Id.* Alcon indicated that because the vehicle did not yet have valid license plates, it could not be driven to the Department of Motor Vehicles (DMV) office. *Id.* Boyd (still seated in the passenger seat) asked Alcon how they should get to the DMV office. *Id.* Alcon responded by telling Boyd: "You, shut the fuck up. I was not talking to you, you are not part of this contact, shut the fuck up." *Id.* At this time, Larson became concerned about the situation escalating based on her awareness that Boyd has Post-Traumatic Stress Disorder (PTSD). *Id.* ¶ 13. She advised Alcon of this fact and suggested they move the conversation away from Boyd's presence. *Id.*

Larson and Alcon moved to the rear of the vehicle, and Alcon began asking questions about several matters. *Id.* Alcon then asked Larson if there were any weapons in the vehicle, whereupon she advised him of the handgun on the backseat. *Id.* As Alcon questioned Larson, Boyd, also concerned about how the incident might impact his PTSD, attempted to remove himself from the

2

situation, exiting the car with his hands out to the side (so Alcon would not be alarmed) and visibly empty and attempted to walk away from the scene in full view while announcing what he was doing. *Id.* ¶ 14.  Alcon then ordered Boyd to get back into the vehicle (knowing the handgun was there). *Id.*  Boyd then asked Alcon whether he was under arrest, but Alcon did not respond. *Id.*  Larson walked over to Boyd and directed him back into the vehicle. *Id.* ¶ 15.  At this time, Alcon pointed his Taser-like weapon at Boyd as he approached the vehicle. *Id.*  Boyd saw the Taser-like weapon and immediately raised his hands to show that he was unarmed and was not holding a weapon. *Id.*  Witnessing the foregoing, Larson stepped in front of Alcon and attempted to de-escalate the situation, advising him that if he was worried about the weapon in the car, she would retrieve it or would allow him to retrieve it if he wished. *Id.,* ¶ 16.  Alcon did not agree but physically grabbed Larson by the arm and brought her to the ground. *Id.*  After taking Larson to the ground, Alcon released her briefly, and she was able to regain her feet. *Id.* ¶ 17.  In this position and with her arms raised and visible, Larson requested that they simply finish their conversation about the traffic stop. *Id.*  Alcon responded by again forcing Larson to the ground. *Id.*  At this time, Alcon ordered Boyd to remain in the vehicle, and Boyd did so, keeping his hands visible and outside of the window of the car at all times. *Id.* ¶ 18.  As he continued to struggle with Larson, Alcon un-holstered his service weapon and pointed it at Boyd with his finger on the weapon's trigger. *Id.*

Alcon arrested Larson.  She was charged with Obstructing Government Operations (C.R.S. § 18-8-102), Resisting Arrest (C.R.S. § 18-8-103((1)(A)), Operating an Uninsured Motor Vehicle (C.R.S. § 42-4-1409(1)) and Failure to Display Valid Registration (C.R.S. § 42-3-121(1)(A)). *Id.*, ¶¶ 19, 23.  Defendant Alcon arrested Boyd as well.  He was charged with Obstructing Government Operations (C.R.S. § 18-8-102) and Possession of a Weapon by a Previous Offender (C.R.S. § 18-

12-108).  All charges against the two Plaintiffs were later dismissed.

## II. LEGAL STANDARDS

A.      Fed. R. Civ. P. 12(c)

A motion for judgment on the pleadings must be evaluated by this Court using the same standard for motions under Fed. R. Civ. P. 12(b)(6). *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011). The principal difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is the latter is typically filed after an answer has been filed asserting the affirmative defense of a failure to state a claim under Rule 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80.  Second, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik,* 671 F.3d at 1191.

B.     Qualified Immunity

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

In *Pearson*, the Supreme Court discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

## III. DISCUSSION

Defendant Alcon asserts entitlement to qualified immunity. Because the qualified immunity analysis includes an evaluation of the merits, the Court will focus its efforts on determining whether Plaintiffs have established on supported facts that Alcon violated their clearly established constitutional rights.[1]

A.  Excessive Force

The first issue concerns whether Alcon employed force against Boyd that was clearly constitutionally excessive during this traffic stop. Specifically, Boyd argues that Alcon's pointing of his loaded weapon with his finger on the trigger against a non-suspect was constitutionally excessive.

Officers making a lawful arrest are still bound by the Fourth Amendment's overarching requirement of reasonableness. In determining whether particular law enforcement conduct comports with reasonableness, a court must balance "the nature and the quality of the intrusion on the individual's Fourth Amendment interests, against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This inquiry requires a court to consider whether the "the totality of the circumstances justified a particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). Relevant factors include "the crime's severity, the

---

[1] Generally, to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 516 (10th Cir. 1998).

6

potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1188 (10th Cir. 2001) (internal quotations omitted). But the assessment is not to be made in a vacuum. Rather, a court must determine reasonableness from the perspective of a reasonable officer in the context in which the decision was made, recognizing that officers "may be forced to make split-second judgments under stressful and dangerous conditions." *Id.* Guided by the Tenth Circuit's method of analysis in excessive force cases, the Court will consider whether excessive force was used.

In *Holland*, the Tenth Circuit established that "the display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force" and may violate the Fourth Amendment if done unreasonably or excessively. *Holland*, 268 F.3d at 1192. The *Holland* court found that continuing to point a loaded firearm at a person who has submitted to the authority of the officer and who otherwise poses no reasonable danger violates the Fourth Amendment. *Id.* at 1193. By contrast, an officer in that scenario "may simply hold[] the weapon in a fashion ready for immediate use." *Id.*

For purposes of the present motion, the Court accepts that Alcon pointed his firearm at Boyd. The record contains no indication of insubordination by Boyd; to the contrary, the well-pleaded facts state that Boyd complied with all directions given him by either Alcon or Larson. In light of Boyd's unequivocal compliance, it may have been unreasonable or excessive for an officer to hold Boyd at gunpoint during traffic stop absent some reasonable concern for officer safety.

The Court has canvassed the Tenth Circuit to determine whether precedent guides the current decision. The key decision involving the general issue of an allegation of excessive force by pointing a gun is *Henry v. Storey*, 658 F.3d 1235 (10th Cir. 2011). In that case the plaintiff had

7

been pulled over in a traffic stop after an officer determined that the license plate of the vehicle the plaintiff was driving was reportedly stolen according to the National Crime Information Center (NCIC). Prior to the stop, the officer had called for backup, and five other officers responded. Once the other officers were at the scene, the originating officer, while still in his patrol car, ordered the plaintiff to exit his vehicle with his hands up. The plaintiff did so, and thereby confronted "six guns aimed at him." *Id.* at 1238. During this encounter, as here, plaintiff complied with all orders, had not committed any traffic offense, and during the encounter was told to "shut up" by the police. The Tenth Circuit stated that, even assuming the defendant (among all other officers) had his gun pointed at the plaintiff, this "use of force was not excessive under the facts known to him at the time." *Id.* at 1239.

> Viewing the facts from a reasonable officer's point of view, Officer Storey did not use excessive force by pointing his weapon at Mr. Henry. Officer Storey had probable cause to believe Mr. Henry had stolen a vehicle, a felony. Officer Storey could reasonably conclude that the driver posed an immediate threat to the safety of the officers and the public – a driver caught with a stolen vehicle has strong incentive to evade arrest, given the seriousness of the crime. Further, the means of evading arrest were close at hand: the driver was in the vehicle with the engine running. . . . The incident took place late at night, within Albuquerque city limits. . . . Any resulting chase could place the officers and the public at risk. Although Mr. Henry was not actively resisting or evading arrest by flight, under the circumstances the amount of force used by Officer Storey was reasonable. To conclude otherwise would merely second-guess an officer's on-the-ground decision using the benefit of 20/20 hindsight. . . .

*Id.* at 1239 (citation omitted). Applying this analysis to the present case, one difference is the crime's severity. Here, there was no reasonable suspicion that Boyd had committed any crime at all. The only criminal activity at issue whatsoever was Larson's driving a vehicle without license plates. The Tenth Circuit did note that after its own "independent research," it has found only one prior case, *Holland*, 268 F.3d 1179, in which an officer's aiming a weapon at someone, without

8

more, might constitute excessive force. However, without any analysis, the court merely stated that because the facts in *Holland* were different than *Henry* (the former involving a SWAT operation during which several bystanders' children who were not suspected of a crime were held at gunpoint in the course of executing a misdemeanor warrant), it had little or no bearing on the case before them.

>Turning to the *Holland* case, the Tenth Circuit's analysis is instructive:

>The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time. "These are the very ingredients relevant to an excessive force inquiry." . . . Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use.

268 F.3d at 1192-93 (citation omitted). Relevant in the Tenth Circuit's discussion of this issue in its various cases is the length of time the gun was pointed at the plaintiff, particularly whether the officer continued to point the gun after gaining control of the situation. Here, I do not have any information on this point. Also potentially relevant is any threat by the officer to pull the trigger, a fact that is absent here. In their Reply, Defendants rely on *Reeves v. Churchich*, 484 F.3d 1244 (10th Cir. 2007) for the proposition that the undisputed pointing of a weapon for a brief period and limited in duration only until the threat level is determined and extinguished does not constitute excessive force. The problem with this argument is that the length of time and duration relative to control of the situation is not undisputed here. Therefore, I do not find that case helpful.

Defendants also rely on Boyd's admission that during the encounter he became agitated and also tried to walk away from the scene. However, Plaintiffs' recitation of facts does not include any

allegation that Boyd violated any commands given by Alcon and, contrary to Defendants' arguments, does not establish that Boyd was uncooperative and failed to follow orders. I do not read as much into the Complaint as Defendants, but if, at the summary judgment stage, those characterizations prove to be true under the proper evidentiary standards, Boyd's excessive force claim may well be in jeopardy. Finally, I cannot tell from the Complaint at what point Alcon had control of the scene during the encounter, if indeed there was any point that he did not have control of the scene (the allegations of a "struggle" with Larson notwithstanding). I note that Defendants have not filed a motion to dismiss Larson's excessive force claim. Moreover, I do not consider here the potential legal consequences of a fact scenario in which Alcon created a situation by his overreaction.

What is clear to me after reading these cases is that the Tenth Circuit decided, prior to the facts in this case, that (1) a law enforcement officer's pointing of a gun at someone might, without more, constitute excessive force;[2] (2) the determination of excessive force depends on the factual circumstances of the gun-pointing conduct; and (3) those circumstances include, at the very least, the seriousness of the alleged criminal offense at issue in the stop, whether the plaintiff is a suspect or bystander, whether there was a threat to pull the trigger, how long the officer had his or her gun "trained" on the plaintiff, and whether the gun was pointed longer than necessary (*e.g.*, continuing the pointing after the situation was under control). This is a fact-intensive inquiry, inappropriate for determination at the motion to dismiss stage. Suffice it to say that I believe Boyd has met the standard for pleading an excessive force claim, and the clearly established law does not bar such a

---

[2] *See Chidester v. Utah County*, 268 Fed. Appx. 718, 728-729, 2008 WL 635361, 9 (10th Cir. 2008) ("It is clearly established that law enforcement officers may not point weapons at suspects that pose no threat.").

claim at this point.[3] For this reason, the motion to dismiss the excessive force claim by Boyd against Alcon must be denied.

B.   Unlawful Arrest

An arrest must be supported by probable cause. *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002). Probable cause exists if facts and circumstances known by an officer through reasonably trustworthy sources "are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (internal quotation marks omitted). Moreover, an officer has an obligation to investigate easily accessible facts relevant to the probable cause determination. *Cortez v. McCauley,* 478 F.3d 1108, 1117 (10th Cir. 2007). If the arrest was, under the law, not supported by probable cause, I must still dismiss the Complaint unless the lack of probable cause would have been evident to a reasonable officer in light of clearly established law. *See Kaufman v. Higgs,* 697 F.3d 1297, 1300 (10th Cir. 2012). "As a practical matter, we implement this standard by asking whether there was arguable probable cause for an arrest – if there was, a defendant is entitled to qualified immunity." *Id.* (internal quotation marks omitted).

First, with regard to any arrest for Failure to Display Valid Registration, Plaintiffs allege that under Colorado law, this is not an arrestable offense, and Defendants do not dispute that. Therefore, Alcon must allege some other legitimate basis for an arrest. Defendants proffer the arrest for Operating an Uninsured Motor Vehicle, which Defendants contend is an arrestable offense under Colorado law. However, the Complaint contains no mention whatsoever of insurance; thus, for purposes of a motion to dismiss, I must assume Alcon made no request for proof of insurance, nor

---

[3]Incidentally, although Defendant argues that Plaintiff must also allege some sort of *de minimis* injury, the Tenth Circuit cases decided above do not impose that requirement in a gun-pointing situation, and neither do I.

is there any allegation in the Complaint that Larson had failed to purchase insurance for the car. Further, I do not believe that probable cause for a lack of insurance is established by the mere lack of license plates. Therefore, Alcon must allege some other legitimate basis for an arrest.

Defendants state that the Complaint contains sufficient facts to establish probable cause for the Obstructing Government Operations (both Plaintiffs Boyd and Larson) and Resisting Arrest (Plaintiff Larson) allegations. At this pleading stage, I cannot find probable cause for the arrest of Boyd for Obstructing Government Operations. Defendants rely on his failure to comply with Alcon's orders in asserting their qualified immunity claim on this point. I will examine those orders chronologically:

1. Alcon ordered Boyd to "shut the fuck up." The Complaint does not establish a violation of this order.

2. Sometime later, after he exited the vehicle (no allegation that prior to this Alcon ordered him to stay in the vehicle), Alcon ordered Boyd to get back in the vehicle. Boyd first asked Alcon whether he was under arrest (a reasonable question); then Larson went to Boyd "and directed him back into the vehicle." As Boyd was returning to get into the vehicle, Alcon had his Taser-type weapon pointed at Boyd, and in response Boyd raised his empty hands. The Complaint assumes but does not state that Boyd got into the car at that time. Although the facts are a little vague here, the Complaint does not establish disobedience of an order concerning this exchange, particularly when the facts are read in a light most favorable to the Plaintiffs, which I must do here.

3. After Boyd got back into the car and while Alcon was handling Larson, Alcon ordered Boyd to remain in the vehicle. Boyd complied. The Complaint does not establish a violation of

       this order.

4.      After the struggle with Larson was completed, Alcon ordered Boyd to exit the vehicle. Boyd complied. The Complaint does not establish a violation of this order.

Thus, I find that dismissal of Boyd's claim for Unlawful Arrest is not warranted.

      Regarding Larson and her arrest for Obstructing Government Operations, Defendants argue that "she was uncooperative and persisted in attempts to control the traffic stop, including coming between Defendant Alcon and Boyd and refusing Defendant Alcon's orders in placing her under arrest." Reply at 9. Defendants' version of these events may well prevail in this case, but at the motion to dismiss stage, I cannot agree that their characterization is consistent with the judicial obligation of viewing the facts in a light most favorable to Larson. The Complaint does not plead a refusal to obey Alcon regarding being placed under arrest; it gives no explanation whatsoever for why Larson was taken to the ground twice other than this is simply what Alcon chose to do. Under this same standard, I cannot say as a matter of law that Larson's efforts to keep the confrontation from escalating in light of her knowledge of Boyd's prior mental history constituted obstruction. I have been privy to many similar confrontations that result in the use of a Taser (or worse), and the fact that this did not happen here is, at least at this stage in the litigation, some indication her efforts were successful. For these same reasons, I do not believe dismissal of the Unlawful Arrest claim for Resisting Arrest is appropriate.

      Finally, with regard to the charge of Possession of a Weapon by a Previous Offender against Boyd, the Complaint does not provided a sufficient basis to establish probable cause. The parties mention in their briefs that Alcon – at some point after the Plaintiffs were under arrest – received information that Boyd had a prior felony and, thus, charged him with this crime. The parties also

agree in their briefs that this information provided to Alcon was erroneous. However, none of this information is in the Complaint. There is support for the proposition that when an arresting officer is misinformed as to facts, and he acts with probable cause or reasonable good faith as to validity of his actions, he is not liable for false arrest or for consequences ensuing from such arrest. *Hill v. Scott*, 349 F.3d 1068 (8th Cir. 2003); *Rodriguez v. Ritchey*, 539 F.2d 394 (5th Cir. 1976). Because my factual analysis is limited solely to the Complaint and I must not consider extraneous information contained in the briefs, I deny the motion to dismiss on this ground. However, the parties may want to consider the efficacy of persisting in this particular claim hereafter.

C.    *Monell* Claim

In seeking dismissal of Plaintiffs' municipal liability claim, Defendants rely solely on the Plaintiffs' failure to state constitutional liability claims against Alcon. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Therefore, in light of my decision herein, the motion to dismiss the municipal liability claims is premature and must be denied.

### CONCLUSION

Accordingly, Defendants' Motion for Partial Judgment on the Pleadings [filed February 26, 2015; docket #18] is **denied**.

Dated and ordered in Denver, Colorado, this 12th day of May, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge