IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00101-MEH

JONATHAN BOYD and
JAMI LARSON,

    Plaintiffs,

vs.

MONTEZUMA COUNTY SHERIFF'S OFFICE,
STEVE NOWLIN, in his official capacity as Sheriff of Montezuma County,
DENNIS SPRUELL, in his individual capacity, and
ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office,

    Defendants.

___

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
___

Defendant, ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office, submits this Reply in Support of Motion for Summary Judgment and states as follows.

Alcon filed his Motion for Summary Judgment on July 29, 2016, seeking dismissal of all claims asserted against him ("Motion"). Doc. 67. Plaintiffs Boyd and Larson responded on August 26, 2016 (Doc. 70).[1] For purposes of clarity, Alcon replies to

---

[1] In the Motion, Plaintiff Jami Larson is referred to as "Larson-Boyd." However, as Plaintiffs' Response refers to her simply as "Larson," this Reply will use the same designation.

Plaintiffs' arguments following the format set forth in the Motion.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

In response to Alcon's statement of undisputed material facts, Plaintiffs chose to address only paragraphs 2, 3, 4, 8, 9, 10, and 14. Pursuant to Fed. R. Civ. P. 56(e),

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or (4) issue any other appropriate order.

As Plaintiffs have failed to address paragraphs 1, 5-7, 11-13, and 15-24, the Court should consider those facts to be undisputed for purposes of the Motion. Alcon otherwise addresses Plaintiffs' disputes below.

2. Plaintiffs dispute whether they cut off another vehicle. However, there is no dispute that their vehicle was not properly registered.

3. Plaintiffs dispute that Boyd injected himself into the conversation between Alcon and Larson because he was also part of the stop. However, the deposition testimony from Boyd about his own behavior speaks for itself.

4. Plaintiffs dispute that Boyd became agitated. Again, however, the deposition testimony speaks for itself, as well as Larson's volunteering to move the conversation, which she directly attributed to the fact that "Boyd can have issues with Post-Traumatic Stress Disorder." Amended Complaint (Doc. 4) at p. 3, ¶ 13.

2

8-9.     Plaintiffs dispute that Alcon pulled his taser when Boyd was still out of the car, stating that it "was not utilized until Mr. Boyd was already back in the vehicle." Response at p. 3.  However, the Motion acknowledges that there is a dispute as to which direction Boyd was walking after leaving the car.  As noted in the Motion, what is undisputed is that Larson came between the two men.  Plaintiffs do not dispute this, which Larson noted was not a "smart move."  *Id.*  Moreover, even if Boyd was in the car at the time the taser was unholstered, there is no dispute that it was not deployed.[2]

10.     Plaintiffs again dispute the "chain of events" but do not provide sufficient evidence in support of this.  Plaintiffs state that Alcon had already thrown Larson to the ground once when he drew his taser.  However, Exhibit 2 to the Response at p. 38:2 notes that Larson was "sure" that Alcon told her to get out of the way prior to this.

14.     Plaintiffs assert that Larson did say that she has seen Boyd "get angry and try to climb out of a window" but that she was not referring to Boyd's actions at the time of the incident.  However, the testimony of the parties and of witness Ron Pledger confirm that Boyd was agitated and making threats to Alcon, which is what is material for purposes of the Motion.

---

[2]     Additionally, Boyd's deposition testimony indicates he was not in the car when the taser was unholstered: "And when I turned around, I was being told, in quote, to 'Get back in the fucking vehicle now.  Get back in the fucking vehicle.'  And I had a Taser less than four inches from my face."  Response Exhibit 1 at p. 171:22-25.

3

## ARGUMENT AND AUTHORITY

**I.   Standard of Review**

Plaintiffs do not dispute the Standard of Review as set forth in the Motion.

**II.  Defendant Alcon is Entitled to Summary Judgement on Plaintiffs' Claim for Excessive Force.**

A.   Boyd's Claim

Plaintiffs state that, "viewed in isolation, Mr. Boyd's behavior combined with the awareness that there was a weapon in the car could cause reasonable alarm to any officer." Response at p. 4. However, they assert that Alcon's actions escalated the contact to the point at which those circumstances existed, primarily that Alcon had Boyd return to the car despite knowing a gun was inside.[3]

Plaintiffs cite no case law in support of this argument. However, "the reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment they used force but also on whether the officers' own conduct during the seizure unreasonably created the need to use such force." *Hastings v. Barnes*, 252 F. App'x 197, 203 (10th Cir. 2007). In *Hastings*, the Tenth Circuit found that the defendant officers did escalate the situation, which involved the fatal shooting of a suicidal man by police officers after the man was not aggressive to the officers and was attempting to retreat into his own home.

---

[3] Plaintiffs do not dispute that Alcon had a valid reason for stopping them due to lack of registration. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). *See also* C.R.S. § 42-3-202.

4

Here, Boyd's use of force claim is predicated on Alcon's actions "when, at gunpoint and with intimidation and implied threat of deadly force, he ordered Plaintiff Jonathan Boyd to remain in his vehicle." Doc. 4 at p. 9, ¶ 49. The undisputed facts establish that, from the beginning of the contact, Boyd behaved strangely, prompting his wife to request that Alcon speak with her outside of the car. Boyd then caused further interruption by leaving the car.[4] Plaintiffs even admit that Boyd's conduct would cause concern to a reasonable officer. Their reliance on Alcon's conduct is misplaced, as everything that Alcon did was in response to first Boyd's and then Larson's increasingly disruptive and aggressive behavior. Alcon unholstered his taser after Boyd began behaving strangely and then pointed his gun at Boyd in a further effort to control the scene, which included one person actively struggling against Alcon's efforts, another person who was agitated and making threats of violence (while in a car that contained a gun), and bystanders in the parking lot.

This was a fluid and rapidly developing situation which was not of Alcon's making, and his actions to control the situation were reasonable. The outcome, which did not include the discharge of any weapons and did not include any serious injuries, further demonstrates that Alcon's actions were reasonable.

B. <u>Larson's Claim</u>

Plaintiffs further assert that Alcon's actions with respect to Larson also caused the need for force to be used. In support of this, they argue that Alcon's decision to reholster

---

[4] Plaintiffs make much of the fact that Larson told Alcon that there was a gun in the car and claim that Alcon's attempts to have Boyd remain the car were therefore unreasonable. However, given Boyd's behavior, this is even more reason that his leaving the car would cause concern to an officer.

5

his taser when he first attempted to gain control of Larson somehow proves that his conduct was unreasonable. Response at p. 6. However, Larson has admitted to coming between Alcon and Boyd despite Alcon's orders for her to step aside. Larson's actions necessitated Alcon's taking steps to get the situation under control, and the evidence does not indicate that the force he used to do this was unreasonable.

**III.	Defendant Alcon is Entitled to Summary Judgement on Plaintiffs' Claim for False Arrest.**

A.	Boyd's Claim

With respect to Plaintiff Boyd's false arrest claim, he again relies on Alcon's conduct while downplaying or even outright denying his own behavior. Boyd asserts that there was no probable cause to arrest him for obstruction of government operations as "[a]t that point in time, he had returned to the vehicle as Defendant Alcon had ordered him to do and remained seated as Defendant Alcon was ordering him to do, with his hands visible and outside of the open car window." Response at p. 8.

However, as set forth in the undisputed facts, Boyd admitted to being agitated and threatening Alcon while he was attempting to control Larson, which constitutes obstruction of government operations. Nor have Plaintiffs disputed the testimony of witness Ron Pledger, who confirmed that both Boyd and Larson were uncooperative with Alcon while he was attempting to gain control of the situation.

Finally, Boyd does not address that he was also arrested for possession of a weapon by a previous offender. However, as set forth in the Motion, although this may have been incorrect, Alcon had a good-faith basis for believing that Boyd had a prior felony

as dispatch had advised him of that while still on scene. There is authority for the proposition that such a good-faith mistake does not make an otherwise valid arrest unreasonable in violation of the Fourth Amendment. *See Hill v. Scott*, 349 F.3d 1068, 1074 (8th Cir. 2003).

### B. Larson's Claim

Larson admits to having stepped between Boyd and Alcon but asserts that she did this with the "apparent and obvious purpose of attempting to de-escalate the situation and calm Boyd down, not for the purpose of obstructing, impairing, or hindering the performance of a governmental function by use of physical interference or obstacle." Response at p. 8.

However, under the plain language of C.R.S. § 18-8-102, Larson intentionally placed herself between Alcon and Boyd, and her reasons for doing so are not part of the analysis.[5] Although the statute provides that an affirmative defense to the crime is whether the interference was done to impair or hinder unlawful action, Alcon's actions were not unlawful for reasons discussed in the Motion and above.

Finally, Plaintiffs assert that Larson's actions do not constitute obstruction of government operations but do not address whether she was resisting arrest. As noted in the Motion, her actions in physically interposing herself between Boyd and Alcon despite Alcon's orders to get out of the way gave Alcon probable cause for her arrest.

---

[5] Larson claims that she did this in an effort to "assist Defendant Alcon in calming the situation and any belief to the contrary on the part of Defendant Alcon was unreasonable." Response at pp. 8-9. Again, Larson's admissions that she ignored Alcon's orders speak for themselves and directly refute this assertion.

**CONCLUSION**

Despite Plaintiffs' assertions that Alcon's conduct unnecessarily escalated the traffic stop, the undisputed facts indicate that Plaintiffs, not Alcon, behaved unreasonably and increasingly disruptively after Alcon pulled them over. His behavior was reasonable under the circumstances and does not rise to the level of violating Plaintiffs' constitutional rights. He is therefore entitled to qualified immunity, and the claims against him should be dismissed.

WHEREFORE, Defendant Alcon prays that this Court grant summary judgment in his favor and dismiss Plaintiffs' claims against him with prejudice. Defendant Alcon further prays that this Court grant him his costs associated with defending this matter, attorney fees as provided by applicable rules and statutes, and any other relief this Court deems just and proper.

Respectfully submitted,

Date: September 9, 2016

s/ Ann. B. Smith
Ann B. Smith
VAUGHAN & DeMURO
111 South Tejon Street, Suite 545
Colorado Springs, CO 80903
(719) 578-5500 (phone)
(719) 578-5504 (fax)
vnd@vaughandemuro.com (e-mail)
ATTORNEY FOR DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Douglas J. Reynolds**
drey@boppreynoldslaw.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

                                            s/ Ann. B. Smith
                                            Ann. B. Smith
                                                VAUGHAN & DeMURO
                                                111 South Tejon Street, Suite 545
                                                Colorado Springs, CO 80903
                                                719-578-5500 (phone)
                                                719-578-5504 (fax)
                                                vnd@vaughandemuro.com (e-mail)
                                          ATTORNEY FOR DEFENDANTS