IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00101-MEH

JONATHAN BOYD and
JAMI LARSON,

    Plaintiffs,

vs.

MONTEZUMA COUNTY SHERIFF'S OFFICE,
STEVE NOWLIN, in his official capacity as Sheriff of Montezuma County,
DENNIS SPRUELL, in his individual capacity, and
ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office,

    Defendants.
_____

**TRIAL BRIEF**
_____

Defendant, ADAM ALCON, individually and in his capacity as an employee of the Montezuma County Sheriff's Office, Submits this Trial Brief:

## NATURE OF THE CASE

This action is brought by Plaintiffs, Jonathan Boyd ("Boyd") and Jami Larson-Boyd ("Larson-Boyd") arising out of a traffic stop and arrest on June 10, 2013, in Montezuma County, Colorado, by Defendant Adam Alcon ("Alcon"). The only claim remaining against Alcon and the issue presented for this bifurcated trial is Plaintiffs' 42 U.S.C. § 1983 for alleged use of excessive force in violation of the Fourth Amendment.

This Trial Brief addresses three issues that this Court may be called on to address during the course of the trial: The Standard for Qualified Immunity In Fourth Amendment Claims of Excessive Force; The Fourth Amendment Standard for Use of Force Including A Show of Force By Drawing A Firearm; and The Irrelevance Of Evidence Or An Argument That An Officer Escalated the Contact Leading to the Use of Force And/Or Had Other Available Options.

### A. The Standard For Qualified Immunity In Excessive Claims Of Force Cases

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated a two-step procedure for resolving government officials' qualified immunity claims. This procedure involved first deciding whether a plaintiff has alleged or made out a violation of a constitutional right and, second, if the right at issue was "clearly established" at the time of defendants' alleged misconduct. These inquiries may be addressed in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2008).

In *Mullenix v. Luna*, ___ U.S. ___,136 S. Ct. 305, 193 L. Ed. 2d 255 (2015)(per curiam) the Supreme Court reversed the Fifth Circuit's denial of qualified immunity to a state trooper alleged to have used excessive force when, while trying to disable the vehicle of a person who was fleeing from arrest and engaged in a high-speed chase by shooting the radiator or engine block, he accidentally shot and killed the fleeing motorist. Writing

2

for the majority, Justice Scalia observed:

> A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).
>
> "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *al–Kidd, supra*, at 742, 131 S. Ct. 2074. The dispositive question is "whether the violative nature of particular conduct is clearly established." *Ibid*. (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam ) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). *Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts*." 533 U.S., at 205, 121 S.Ct. 2151.

*Mullenix*, 136 S. Ct. at 308 (emphasis added).

In the context of the Fourth Amendment, then, the question of whether the law was clearly established "depends very much on the facts of each case," and the precedents must "squarely govern" the case at issue. *Brosseau*, 543 U.S. at 201. Further, unless it can be said that an officer "knowingly violate[d] the law" or was "plainly incompetent," he or she is entitled to qualified immunity. *Malley*, 475 U.S. at 341. If the use of force falls within the "hazy border between excessive and acceptable force" and is otherwise not "beyond debate," the officer is entitled to qualified immunity. *Brosseau*, 543 U.S. at 201; *Ashcroft v. al-Kidd*, 563 U.S. at 741.

3

The Supreme Court has repeatedly gone back to this overriding premise of the qualified immunity defense – that law enforcement officers may not be held liable for damages unless the officers were "plainly incompetent" or "knowingly violate[d]" clearly established law. *Carroll v. Carman*, ___ U.S. ___, 135 S. Ct. 348, 350, 190 L. Ed. 2d 311 (2014) (internal quotation marks omitted). This position has been emphasized in a flurry of qualified immunity decisions by the Court reversing federal courts of appeals' denial of qualified immunity. *See, e.g., Mullenix, supra*; *City & County of San Francisco v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1774 n.3, 191 L. Ed. 2d 856 (2015); *Carroll* v. Carman, ___ U.S. ___;135 S. Ct. 348, 190 L. Ed. 2d 311 ( 2014) (per curiam); *Plumhoff v. Rickard*, ___ U.S. ___, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014); *Wood v. Moss*, ___ U.S. ___, 134 S. Ct. 2056, 188 L. Ed. 2d 1039 (2014); *Stanton v. Sims,* ___ U.S. ___, 134 S. Ct. 3, 187 L. Ed. 2d 341 (2013) (per curiam); *Reichle v. Howards*, 566 U.S. 658 (2012); *Ryburn v. Huff*, 565 U.S. 469 (2012) (per curiam); *Messerschmidt v. Millender,* 565 U.S. 535 (2012); *Ashcroft v. al–Kidd*, *supra*.

Most recently, the Supreme Court in the unanimous *per curiam* opinion of *White v. Pauly*, __ US __, 137 S. Ct. 548 (2017), found it "necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *Id.* at 552 (quoting *Ashcroft v. al-Kidd*). Reversing a divided Tenth Circuit panel decision that denied qualified immunity in the context of an excessive force claim,[1] the Court held

---

[1] In *White v. Pauly*, two New Mexico State Police Officers investigating a "road rage" incident went to the suspect's house and attempted to contact the suspect, Daniel Pauly. As a third officer – State Police Officer Ray White – arrived on the scene, he heard someone inside the house shout "we have guns" and observed Daniel Pauly fire two

4

that the Tenth Circuit panel majority "misunderstood" the "clearly established" analysis by placing reliance on the general statements of principles of Fourth Amendment use of force law set out in *Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985). *White*, 137 S. Ct. at 552. The Court held that, while "general statements of the law are not inherently incapable of giving fair and clear warning" to law enforcement officers, *Graham* and *Garner* do not by themselves create clearly established law outside "an obvious case." *Id.*

It is not clear whether any court, other than The United States Supreme Court, can for purposes of qualified immunity create clearly established law. The Supreme Court has reserved this issue. *Taylor v. Barkes*, ___ U.S. ___, 135 S. Ct. 2042, 2045, 192 L. Ed. 2d 78 (2015). *See also Sheehan*, 135 S. Ct. at 1776 (merely assuming without deciding that "a controlling circuit precedent could constitute clearly established federal law"); *Carroll*, 135 S. Ct. at 350; *Reichle*, 132 S. Ct. 2088. Such reservation has, not surprisingly, been noted by a number of lower courts. *See, e.g.*, *Soto v. City of New York*, No. 12-CV-6911 (RA), 2015 WL 3422155, *3 (S.D.N.Y. May 28, 2015); *Doe v. Rector & Visitors of George Mason Univ.*, No. 1:15-CV-209, 2015 WL 5553855, *19 (E.D. Va. Sept. 16, 2015); *Estate of Burns v. Williamson*, No. 11-CV-3020, 2015 WL 4465088, *7 (C.D. Ill. July 21, 2015).

---

shotgun blasts in the direction of one of the officers. When Officer White, who had taken cover behind a stone wall, observed Daniel Pauly's brother, Samuel Pauly, point a handgun in his direction, he fired his duty weapon, killing Samuel Pauly. The Tenth Circuit concluded qualified immunity was not available to White, as a reasonable officer in White's position would have known that he could not have shot the suspect without moving from his position behind the stone wall and must first advise that he is a law enforcement officer and warn the suspect to drop his weapon before employing deadly force.

"When a defendant asserts qualified immunity . . . the burden shifts to the plaintiff" to rebut a defense of qualified immunity – and such rebuttal is a demanding standard. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  *See also Pearson*, 555 U.S. 223.  It is one which can not be met by taking refuge in lofty general constitutional principles divorced from the factual realities actually confronted by police officers.  Assessment of an officer's use of force must account for the rapidly evolving circumstances faced by police officers and the need for split-second decisions.  It is an assessment that cannot be made with the 20/20 vision of hindsight.  *Graham*, 490 U.S. at 396.

### B. The Fourth Amendment Standard for Use of Force Including A Show of Force By Drawing A Firearm

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Id.* at 396. The standard for analyzing excessive force claims is that of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and is properly analyzed under Fourth Amendment's "objective reasonableness" standard. *Id.*  The Tenth Circuit has noted that "relevant factors in determining objective reasonableness include the crime's severity, the potential threat posed by the suspect to the officer's and other's safety, and the suspect's attempts to resist or evade arrest."  *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001).

In the 2007 opinion of *Mecham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007), the Tenth Circuit was called upon to analyze the conduct of a state trooper who pulled a woman over for driving five miles over the speed limit and not wearing her seatbelt.  The woman refused

to cooperate, including taking a phone call during the stop, refusing to get off the phone, and refusing to get out of her car despite being given orders to the contrary. The trooper ultimately used pepper spray and physically removed the woman from the car. Noting that "the traffic stop was justified at its inception because Mecham was speeding and also not wearing her seat belt in violation of Utah law," (*id*. at 1204), the Tenth Circuit found the trooper's conduct reasonable in light of the circumstances. After enumerating Mecham's conduct, including repeated failure to follow orders given by the trooper, the Court addressed the safety concerns that were also present:

> The objective reasonableness of the use of force was further reinforced by safety concerns. The encounter played out on the narrow shoulder of a busy interstate highway. ... An officer could reasonably be concerned that Mecham might create a danger to herself or others if not first subdued. While Frazier did not believe she was a flight risk, the fact of the matter was that she had her keys and control of the car while refusing to cooperate. In sum, Mecham's disregard for the officers' instructions, the length of the encounter, an the implausibility of Mecham's rationale for not cooperating, lead us to conclude that the officers' use of force was justified in these circumstances.

*Id*. at 1205.

With respect to firearms, the Tenth Circuit has held that the pointing of a gun at a person "inescapably involves the immediate threat of deadly force" and that "[s]uch a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001). In *Holland*, the continued pointing of firearms at children after they had been subdued was found to be unreasonable. *Id*. at 1193.

"[T]he use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection." *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir.2002) (internal quotation marks omitted). "[T]he pointing of firearms should [however,] be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir.2010) (ellipsis and internal quotation marks omitted).

The issue of a permissible show of force by drawing a firearm was addressed in some depth in *Howard v. Ealing*, 876 F. Supp. 2d 1056 (N.D. Ind. 2012). There, the Court noted:

> [W]hile police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there *is* reason to fear danger. ... Accordingly, "courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police. ... And when performing a valid investigatory stop, an officer's pointing a gun at a person is not per se unreasonable. ... Rather, "[s]ome force may be reasonable during an investigatory stop when the circumstances give rise to a justifiable fear for personal safety on the part of the officer." *Whitehead v. Bond*, 680 F.3d 919, 932 n.1 (7th Cir.2012) (citing *Jewett v. Anders*, 521 F.3d 818, 824–25 (7th Cir.2008)) (emphasis in original).

*Howard*, 876 F. Supp. 2d at 1066–67 (some internal cites and quotes omitted).

An officer should not be afraid to draw his weapon to protect himself, his fellow officers, or others around him and courts considering the issue have provided deference to such show of force where there is reason to fear danger.

### C. The Irrelevance Of Evidence Or An Argument That An Officer Escalated the Contact Leading to the Use of Force And/Or Had Other Available Options

The Tenth Circuit has previously considered an officer's actions and whether such officer's "own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) (internal quotation marks and citations omitted). However, in *Medina*, the Court took pains to "emphasize ... that, in order to constitute excessive force, the conduct arguably creating the need for force must be immediately connected with the seizure and must rise to the level of recklessness, rather than negligence" and that "[t]he primary focus of our inquiry ... remains on whether the officer was in danger at the exact moment of the threat of force." *Id*.

The only permissible constitutional question is whether an officer's use of force was objectively reasonable at the time of the use of force. The inquiry is not whether, in hindsight, the officer might have done something different that would have prevented the need for any use of force. As stated by the United States Supreme Court, "[t]he question is not how much force was actually needed, but how much force a reasonable officer would perceive needing." *Saucier*, 553 U.S. at 205. *See also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them.")

                                        Respectfully submitted,

Date: February 10, 2017         s/ Ann. B. Smith
                                        Ann B. Smith
                                              VAUGHAN & DeMURO
                                              111 South Tejon Street, Suite 545
                                              Colorado Springs, CO 80903
                                              (719) 578-5500 (phone)
                                              (719) 578-5504 (fax)
                                              vnd@vaughandemuro.com (e-mail)
                                      ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

      I hereby certify that on this 10th day of February, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Douglas J. Reynolds**
drey@boppreynoldslaw.com

and I hereby certify that the foregoing was placed in the U.S. Mail, postage prepaid, and addressed to the following:

[none]

                                                s/ Ann. B. Smith
                                                Ann. B. Smith
                                                     VAUGHAN & DeMURO
                                                     111 South Tejon Street, Suite 545
                                                     Colorado Springs, CO 80903
                                                     719-578-5500 (phone)
                                                     719-578-5504 (fax)
                                                     vnd@vaughandemuro.com (e-mail)
                                               ATTORNEY FOR DEFENDANT